**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CRYSTAL ROBINSON, RICHARD SCHELLHAMMER, WILLIAM BRADEN, EARL KLADKE, JOSEPH PALOPOLI, JR., LANA SAVAGE, APRIL BRADLEY, JOHN TODA, MAXINE GLENN, NICOLE BLANCHARD, GLADYS TUBBS, TONYA GRUCHACZ, ROBERT TYSON, KATRINA HOWARD, SHEILA CAUTHEN, MARIANO LORENZO MACAISA, GINI MICHELLE COX, KENDRA PIAZZA, DAVID CONROE, and individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 20-cv-00663-RGA |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GENERAL MOTORS LLC, | ) ) | |
| Defendant. | ) ) | |

**GENERAL MOTORS' OPENING BRIEF IN SUPPORT OF**
**MOTION TO DISMISS CLASS ACTION COMPLAINT**

*OF COUNSEL:*

Kathleen Taylor Sooy
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: 202.624.2500
ksooy@crowell.com

Allyson M. McKinstry
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: 212.223.4000
amckinstry@crowell.com

July 22, 2020

Kathleen Furey McDonough (No. 2395)
John A. Sensing (No. 5232)
Clarissa R. Chenoweth-Shook (No. 5728)
POTTER ANDERSON & CORROON LLP
1313 North Market Street, Sixth Floor
Wilmington, DE 19801
Telephone: 302.984.6000
kmcdonough@potteranderson.com
jsensing@potteranderson.com
cchenoweth@potteranderson.com

*Attorneys for General Motors LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF ARGUMENT ................................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS .................................. 2

STATEMENT OF FACTS .................................................................... 2

LEGAL STANDARDS ........................................................................ 7

ARGUMENT ...................................................................................... 8

I.    PLAINTIFFS' FRAUD CLAIMS FAIL ON MULTIPLE GROUNDS. ......................... 8

    A.    Plaintiffs Do Not Meet The Rule 9(b) Particularity Requirements. ..................... 8

    B.    Plaintiffs Do Not Allege That GM Had Exclusive Knowledge Of The Alleged Defect At The Time Of Sale. ................................................. 11

        1.    "Pre- and Post-Sale Testing." ................................................. 11

        2.    Technical Service Bulletins. ................................................... 12

        3.    Consumer Complaints. ........................................................... 13

        4.    Repair and Warranty Data. ..................................................... 15

    C.    Plaintiffs Do Not Allege Facts Establishing That GM Had A Duty To Disclose. ...................................................................... 16

    D.    The Economic Loss Doctrine Bars Certain Plaintiffs' Claims. .......................... 17

II.    PLAINTIFFS' STATE LAW CONSUMER PROTECTION CLAIMS FAIL FOR MULTIPLE REASONS. .......................................................... 18

    A.    Plaintiffs Do Not Adequately Plead Required Elements. .................................. 18

    B.    Certain Plaintiffs' Claims Are Time-Barred. ................................................ 20

    C.    Consumer Protection Claims Fail On State-Specific Grounds. .......................... 22

III.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL. ....................................... 23

    A.    Plaintiffs Do Not Allege They Experienced the Alleged Defect Or Sought Repairs During the Warranty Period. .................................... 23

    B.    GM's Limited Warranty Does Not Cover Design Defects. ................................ 25

IV.    PLAINTIFFS DO NOT STATE VIABLE CLAIMS FOR BREACH OF IMPLIED WARRANTY. ................................................................. 27

    A.    Plaintiffs Plead No Facts Showing Unmerchantability. ................................... 27

    B.    Plaintiffs Do Not Allege That The Defect Occurred Within The Term Of The Warranty. ...................................................... 29

    C.    Certain Plaintiffs' Claims Are Time-Barred. ................................................ 30

    D.    State Law Privity Requirements Bar Certain Plaintiffs' Claims. ....................... 31

V.      PLAINTIFFS' MMWA CLAIM IS NOT COGNIZABLE. ............................................. 32

VI.     PLAINTIFFS CANNOT STATE UNJUST ENRICHMENT CLAIMS. ........................ 33

        A.      Plaintiffs Lack Standing For A Nationwide Class On Unjust Enrichment.......... 33

        B.      Plaintiffs Do Not Plead Viable State Unjust Enrichment Claims....................... 33

        C.      Certain Plaintiffs' Claims Are Time-Barred......................................................... 35

CONCLUSION ................................................................................................................. 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acedo v. DMAX, Ltd.*,
  2015 WL 12696176 (C.D. Cal. Nov. 13, 2015)..................................................27

*Alban v. BMW of N. Am.*,
  2011 WL 900114 (D.N.J. Mar. 15, 2011)..................................................11, 20, 25

*Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*,
  244 So. 3d 896 (Ala. 2017).........................................................................8

*Alin v. Am. Honda Motor Co.*,
  2010 WL 1372308 (D.N.J. Mar. 31, 2010)..................................................33, 34

*Apotex Corp. v. Merck & Co.*,
  229 F.R.D. 142 (N.D. Ill. 2005).................................................................16

*Aracena v. BMW of N. Am., LLC*,
  159 A.D.3d 664 (N.Y. App. Div. 2018) ..................................................31

*Argabright v. Rheem Mfg. Co.*,
  258 F. Supp. 3d 470 (D.N.J. 2017)..........................................................25

*Armstrong v. Deere & Co.*,
  2017 WL 4168485 (S.D. Ind. Sept. 20, 2017) ........................................8, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................7

*Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co., Inc.*,
  594 S.E.2d 425 (N.C. Ct. App. 2004) ....................................................33

*Azoulai v. BMW of N. Am. LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .........................................28

*Baba v. Hewlett-Packard Co.*,
  2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ...........................................14

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007)....................................................................33

*Baraka v. McGreevey*,
  481 F.3d 187 (3d Cir. 2007).....................................................................7

*Beck v. FCA US LLC*,
    273 F. Supp. 3d 735 (E.D. Mich. 2017)...........................................................................12, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................7

*Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.*,
    674 A.2d 534 (Md. 1996) ........................................................................................................34

*Berenblat v. Apple, Inc.*,
    2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ..........................................................................14

*Bey v. Shapiro Brown & Alt, LLP*,
    997 F. Supp. 2d 310 (D. Md.), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) ...............................19

*Billions v. White & Stafford Furniture Co., Inc.*,
    528 So. 2d 878 (Ala. Civ. App. 1988) ....................................................................................19

*Blissard v. FCA US LLC*,
    2018 WL 6177295 (C.D. Cal. Nov. 9, 2018)....................................................................14, 28

*Buffa v. Cygnature Constr. & Dev., Inc.*,
    2016 WL 7984216 (N.C. Ct. App. Dec 30, 2016) ..................................................................23

*Burns v. Winnebago Indus., Inc.*,
    2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) .......................................................................18

*Bussian v. DaimlerChrysler Corp.*,
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ...................................................................................23

*Campbell v. Upjohn Co.*,
    498 F. Supp. 722 (W.D. Mich. 1980) .....................................................................................21

*Chambers v. King Buick GMC, LLC*,
    43 F. Supp. 3d 575 (D. Md. 2014) ..........................................................................................22

*Chaudoin v. Thor Motor Coach, Inc.*,
    2017 WL 3485803 (E.D. Mich. Aug. 15, 2017).....................................................................22

*Chevron U.S.A. Inc. v. Apex Oil Co.*,
    113 F. Supp. 3d 807 (D. Md. 2015).........................................................................................33

*Cipollone v. Liggett Grp., Inc.*,
    505 U.S. 504 (1992).................................................................................................................24

*Cleveland Clinic Fla. v. Child. Cancer Caring Ctr., Inc.*,
    274 So. 3d 1102 (Fla. App. 4 Dist. 2019) ..............................................................................35

*Coba v. Ford Motor Co.*,
    2013 WL 244687 (D.N.J. Jan. 22, 2013) ..................................................................17, 21

*Cooper v. Samsung Elecs. Am., Inc.*,
    2008 WL 4513924 (D.N.J. Sep. 29, 2008) .........................................................................32

*Crystal v. Midatlantic Cardiovascular Assocs., P.A.*,
    133 A.3d 1198 (Md. 2016) .............................................................................................8, 11

*Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*,
    747 A.2d 600 (Md. 2000) .....................................................................................................33

*Cummings v. FCA US LLC*,
    401 F. Supp. 3d 288 (N.D.N.Y. 2019) ..........................................................................31, 32

*Daugherty v. Jacobs*,
    187 S.W.3d 607 (Tex Ct. App. 2006) .................................................................................19

*Davidson v. Apple, Inc.*,
    2017 WL 976048 (N.D. Cal. Mar. 14, 2017) .....................................................................26

*Dawson v. Gen. Motors LLC*,
    2019 WL 3283046 (D.N.J. July 22, 2019) .....................................................................13, 26

*De Sole v. Knoedler Gallery*, LLC
    974 F. Supp. 2d 274 (S.D.N.Y. 2013) ............................................................................8, 11

*Deburro v. Apple, Inc.*,
    2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) ...................................................................29

*Dennis v. Whirlpool Corp.*,
    2007 WL 9701826 (S.D. Fla. Mar. 13, 2007) ....................................................................31

*Dixon v. Ford Motor Co.*,
    2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ...................................................................32

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011) ....................................................................................34

*Duffie v. Mich. Grp., Inc.–Livingston*,
    2016 WL 8259511 (E.D. Mich. Jan. 15, 2016)...................................................................34

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995).......................................................................................17, 24, 25

*Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*,
    93 F. Supp. 3d 915 (N.D. Ind. 2015) ............................................................................33, 34

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
   2007 WL 2421480 (E.D. Mich. Aug. 24, 2007) ........................................................17

*Fowler v. Gen. Elec. Co.*,
   252 S.E.2d 862 (N.C. Ct. App. 1979) .....................................................................32

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007).............................................................................8, 18

*Friedland v. Gales*,
   509 S.E.2d 793 (N.C. Ct. App. 1998) ................................................................8, 11

*Garcia v. Chrysler Grp. LLC*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015).....................................................................17

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ..........................................................10

*Gerstle v. Am. Honda Motor Co., Inc.*,
   2017 WL 2797810 (N.D. Cal. June 28, 2017) .........................................................33

*Gertz v. Toyota Motor Corp.*,
   2011 WL 3681647 (C.D. Cal. Aug. 22, 2011).........................................................26

*Glass v. BMW of N. Am., LLC*,
   2011 WL 6887721 (D.N.J. Dec. 29, 2011) ...............................................10, 19, 20

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................19

*Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*,
   273 F.3d 509 (2d Cir. 2001)................................................................................35

*Goldstein v. Gen. Motors, LLC*,
   2020 WL 1849659 (S.D. Cal. Apr. 13, 2020) .................................................. *passim*

*Gray v. N.C. Ins. Underwriting Ass'n*,
   529 S.E.2d 676 (N.C. 2000).................................................................................19

*Greene v. BMW of N. Am.*,
   2012 WL 5986461 (D.N.J. Nov. 28, 2012) .......................................................11, 15

*Gregory v. Atrium Door & Window Co.*,
   415 S.E.2d 574 (N.C. Ct. App. 1992) ...................................................................31

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
   2013 WL 690822 (C.D. Cal. Feb. 19, 2013)...........................................................15

*Gumbs v. Int'l Harvester, Inc.*,
  718 F.2d 88 (3d Cir. 1983)..................................................................................27

*Haag v. Hyundai Motor Am.*,
  294 F. Supp. 3d 102 (W.D.N.Y. 2018) ...............................................................26

*Hall v. Gen. Motors, LLC*,
  2020 WL 1285636 (E.D. Mich. Mar. 18, 2020) (appeal filed).........................14, 25

*Hammer v. Sam's E., Inc.*,
  2013 WL 3756573 (D. Kan. July 16, 2013) .......................................................22

*Heil Co. v. Polar Corp.*,
  191 S.W.3d 805 (Tex. Ct. App. 2006) ...............................................................18

*Hindsman v. Gen. Motors LLC*,
  2018 WL 2463113 (N.D. Cal. June 1, 2018).................................................26, 27

*Hughes v. Panasonic Consumer Elecs. Co.*,
  2011 WL 2976839 (D.N.J. July 21, 2011)......................................................10, 19

*Huron Tool & Eng'g Co. v. Precision Consulting Servs.*,
  532 N.W.2d 541 (Mich. Ct. App. 1995) .............................................................18

*Ice Corp. v. Hamilton Sundstrand Inc.*,
  444 F. Supp. 2d 1165 (D. Kan. 2006).................................................................33

*J & K Parris Const., Inc. v. Roe Ave., Assocs., Ltd*,
  2015 WL 3551627 (N.Y. Sup. Ct. May 19, 2015)..............................................34

*Jones v. Bank of Am., N.A.*,
  2019 WL 2744470 (N.D. Ala. July 1, 2019) .................................................33, 34

*Kestrel Holdings I, L.L.C. v. Learjet Inc.*,
  316 F. Supp. 2d 1071 (D. Kan. 2004) ............................................................8, 11

*Koski v. Carrier Corp.*,
  347 F. Supp. 3d 1185 (S.D. Fla. 2017) ..........................................................8, 11

*Lamb v. Cookware Co. (USA), LLC*,
  2020 WL 3179682 (S.D.N.Y. 2020)...................................................................32

*Lee v. Carter-Reed Co., L.L.C.*,
  4 A.3d 561 (N.J. 2010)......................................................................................19

*Lexow & Jenkins, P.C. v. Hertz Com. Leasing Corp.*,
  122 A.D.2d 25 (N.Y. App. Div. 1986) ...............................................................31

*Licul v. Volkswagen Grp. of Am., Inc.*,
   2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ......................................................................21

*Lilly v. Tex. Dep't of Criminal Justice*,
   472 S.W.3d 411 (Tex. App. 2015) ...........................................................................8, 11

*Lloyd v. Gen. Motors Corp.*,
   916 A.2d 257 (Md. 2007) ....................................................................................18

*MacDonald v. Thomas M. Cooley Law Sch.*,
   724 F.3d 654 (6th Cir. 2013) ...............................................................................8, 11

*Majdipour v. Jaguar Land Rover N. Am. LLC*,
   2013 WL 5574626 (D.N.J. Oct. 9, 2013)..................................................................25

*Malleus v. George*,
   641 F.3d 560 (3d Cir. 2011), *as amended* (June 6, 2011)..........................................7

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ......................................................12, 15

*Marshall v. Hyundai Motor Am.*,
   51 F. Supp. 3d 451 (S.D.N.Y. 2014)......................................................................33

*Matanky v. Gen. Motors LLC*,
   370 F. Supp. 3d 772 (E.D. Mich. 2019)..................................................................22

*McCalley v. Samsung Elecs. Am., Inc.*,
   2008 WL 878402 (D.N.J. Mar. 31, 2008)...............................................................29

*McGuire v. BMW of N. Am., LLC*,
   2014 WL 2566132 (D.N.J. June 6, 2014) ...............................................................35

*McKee v. Gen. Motors LLC*,
   376 F. Supp. 3d 751 (E.D. Mich. 2019)..................................................................27

*Melcher v. Wiggins*,
   2014 WL 1600511 (S.D. Tex. Apr. 21, 2014) ........................................................21

*Mesa v. BMW of N. Am., LLC*,
   904 So. 2d 450 (Fla. Dist. Ct. App. 2005) .............................................................31

*Meserole v. Sony Corp. of Am., Inc.*,
   2009 WL 1403933 (S.D.N.Y. May 19, 2009) ........................................................29

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
   812 F.3d 294 (3d Cir. 2016)................................................................................8, 9

*Nelson v. Nissan N. Am., Inc.*,
   894 F. Supp. 2d 558 (D.N.J. 2012) ...................................................................25

*Nobile v. Ford Motor Co.*,
   2011 WL 900119 (D.N.J. Mar. 14, 2011) ..........................................................20

*Noble v. Porsche Cars N. Am., Inc.*,
   694 F. Supp. 2d 333 (D.N.J. 2010) ...................................................................18

*In re OnStar Contract Litigation*,
   600 F. Supp. 2d 861 (E.D. Mich. 2009) ............................................................24

*Orlando v. Novurania of Am., Inc.*,
   162 F. Supp. 2d 220 (S.D.N.Y. 2001) ...............................................................18

*Padilla v. Porsche Cars N. Am., Inc.*,
   391 F. Supp. 3d 1108 (S.D. Fla. 2019) ..............................................................32

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir. 2005) ...............................................................................19

*Perales v. Bank of Am., N.A.*,
   2014 WL 3907793 (S.D. Tex. Aug. 11, 2014) ...................................................34

*Pilgrim v. Gen. Motors Co.*,
   408 F. Supp. 3d 1160 (C.D. Cal. 2019) .............................................................32

*Polhill v. FedEx Ground Package Sys.*,
   604 F. App'x 104 (3d Cir. 2015) ....................................................................8, 16

*Ponzio v. Mercedes-Benz USA, LLC*,
   2020 WL 1183733 (D.N.J. 2020) .......................................................................33

*Popham v. Keystone RV Co.*,
   2016 WL 4993393 (N.D. Ind. Sept. 19, 2016) ..................................................30

*Power Process Eng'g Co.v. ValvTechnologies, Inc.*,
   2016 WL 7100504 (E.D. Mich. Dec. 6, 2016) ...................................................33

*Roney v. Gencorp*,
   431 F. Supp. 2d 622 (S.D.W. Va. 2006) .........................................................8, 11

*Rosipko v. FCA US, LLC*,
   2015 WL 8007649 (E.D. Mich. Dec. 7, 2015) ...................................................19

*S. Motor Co. of Dade Cty. v. Doktorczyk*,
   957 So. 2d 1215 (Fla. 3d. Dist. Ct. App. 2007) .................................................21

*Scott v. Fields*,
  92 A.D.3d 666 (N.Y. App. Div. 2012) .................................................................33

*Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*,
  390 So. 2d 601 (Ala. 1980).................................................................................11

*Shapiro v. UJB Fin. Corp.*,
  964 F.2d 272 (3d Cir. 1992)..................................................................................9

*Sherer v. Sherer*,
  393 S.W.3d 480 (Tex. App. 2013).......................................................................35

*Sheris v. Nissan N. Am., Inc.*,
  2008 WL 2354908 (D.N.J. June 3, 2008) ...........................................................27

*Sloan v. Gen. Motors, LLC*,
  2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ................................................12, 26

*Smart v. Sony Corp. of Am., Inc.*,
  2010 WL 11508565 (S.D. Cal. Aug. 6, 2010) .....................................................32

*Smith v. 21st Century Nat. Fuels, LLC*,
  2016 WL 1465431 (S.D.W. Va. Apr. 14, 2016) ..................................................33

*Smith v. Texas*,
  2011 WL 2883402 (N.D. Tex. July 15, 2011) .....................................................34

*State v. Philip Morris Inc.*,
  1997 WL 540913 (Md. Cir. Ct. May 21, 1997) ..................................................34

*Statler v. Dell, Inc.*,
  775 F. Supp. 2d 474 (E.D.N.Y. 2011) ................................................................21

*Stewart v. Electrolux Home Prods., Inc.*,
  2018 WL 1784273 (E.D. Cal. Apr. 13, 2018).....................................................15

*Storey v. Attends Healthcare Prods., Inc.*,
  2016 WL 3125210 (E.D. Mich. June 3, 2016).....................................................34

*Suddreth v. Mercedes-Benz, LLC*,
  2011 WL 5240965 (D.N.J. Oct. 31, 2011)....................................................25, 28

*SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*,
  2012 WL 360170 (M.D. Fla. Feb. 2, 2012) ........................................................19

*Taragan v. Nissan N. Am., Inc.*,
  2013 WL 3157918 (N.D. Cal. June 20, 2013) .....................................................28

*Tatum v. Chrysler Grp. LLC*,
    2011 WL 1253847 (D.N.J. Mar. 28, 2011)...........................................................10

*Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*,
    21 F. Supp. 2d 664 (E.D. Tex. 1998) .............................................................33, 34

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. Mar. 31, 2010) .................................................17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
    Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010)................................25

*Truglio v. Planet Fitness, Inc.*,
    360 F. Supp. 3d 274 (D.N.J. 2018) ......................................................................23

*United States v. Eastwick Coll.*,
    657 F. App'x 89 (3d Cir. 2016) ..............................................................................8

*Watkins v. DineEquity, Inc.*,
    591 F. App'x 132 (3d Cir. 2014) ..........................................................................23

*Weckhorst v. Kan. State Univ.*,
    241 F. Supp. 3d 1154 (D. Kan. 2017) ..................................................................19

*Weiss v. Gen. Motors LLC*,
    418 F. Supp. 3d 1173 (S.D. Fla. 2019) ................................................................27

*Whirlpool Corp. v. Grigoleit Co.*,
    713 F.3d 316 (6th Cir. 2013) ................................................................................25

*White v. Wyeth*,
    705 S.E.2d 828 (W. Va. 2010).............................................................................19

*Williams v. Scottrade, Inc.*,
    2006 WL 2077588 (E.D. Mich. July 24, 2006) .....................................................9

*Williams v. Yamaha Motor Co.*,
    2015 WL 13626022 (C.D. Cal. Jan. 7, 2015) ......................................................31

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) .............................................................................14

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .............................................................................14

*Wozniak v. Ford Motor Co.*,
    2019 WL 108845 (E.D. Mich. Jan. 4, 2019).........................................................18

*Wright v. Publishers Clearing House, Inc.*,
  2019 WL 1177716 (E.D.N.Y. Mar. 12, 2019) ......................................................................18

**Statutes**

15 U.S.C. § 2310(d)(3)(C) ...........................................................................................................32

Ala. Code Sec. 8-19-14 .................................................................................................................21

Ind. Code Ann. § 24-5-0.5-4 ........................................................................................................19

Ind. Code Ann. § 24-5-0.5-5 ........................................................................................................21

Kan. Stat. § 50-634(c) ...................................................................................................................22

Md. Code Ann., Cts. & Jud. Proc. § 5–101 ..................................................................................21

N.Y. Gen. Bus. Law § 349 .......................................................................................................18, 21

N.Y. Gen. Bus. Law § 350 .......................................................................................................18, 21

Tex. Bus. & Com. Code § 17.565 .................................................................................................21

Uniform Commerical Code § 2-314 ...................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................................18

Fed. R. Civ. P. 9(b) ..................................................................................................................*passim*

Fed. R. Civ. P. 12(b)(1) .............................................................................................................1, 33

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................1

## SUMMARY OF ARGUMENT

Plaintiffs allege that after years of use the CUE navigation/radio touch screen system in their model year 2013-2017 Cadillac vehicles started "spider-webbing" and became unresponsive. Most plaintiffs never had their allegedly defective CUE systems repaired, and most who got repairs were covered under the GM warranty. All plaintiffs still own and operate their vehicles. No plaintiff alleges any injury to person or property resulting from the alleged defect.

Plaintiffs allege (1) fraudulent concealment claims; (2) claims under state consumer protection statutes; (3) express warranty claims; (4) implied warranty claims under the Uniform Commercial Code and Magnuson-Moss Warranty Act; and (5) unjust enrichment claims, for nineteen individuals and on behalf of a putative nationwide class and eleven putative state subclasses of purchasers and lessees of certain Cadillac vehicles under the laws of eleven different states. All of these claims are legally and factually deficient, and therefore should be dismissed under Rules 12(b)(1), 12(b)(6), and 9(b) for the following reasons:

1.    Plaintiffs do not plead their fraudulent concealment claims (Count 29) with the specificity required under Rule 9(b), and do not allege any facts establishing that GM had knowledge of the alleged defect at the time of sale or owed plaintiffs a duty to disclose. Certain plaintiffs' claims are also barred by the economic loss doctrine.

2.    Plaintiffs do not sufficiently plead statutory consumer protection claims (Counts 2, 3, 6, 8, 10, 11, 15, 16, 19, 20, 22, 26, 27) because they do not adequately plead deceptive conduct, reliance or causation. Certain plaintiffs' statutory claims are untimely, and also fail for independent reasons under applicable state law.

3.    The express warranty claims (Counts 4, 13, 18, 24) fail because plaintiffs do not allege that the alleged defect occurred within the term of the warranty, and GM's limited warranty does not cover design defects.

4.    The implied warranty claims (Counts 5, 7, 9, 11, 14, 17, 21, 23, 25, 28) cannot proceed because plaintiffs do not allege facts demonstrating that their vehicles were unmerchantable at the time of sale or that the alleged defect occurred within the term of the warranty. Certain plaintiffs' claims fail because they are untimely, and plaintiffs who bought their vehicles used or from third parties cannot assert a claim against GM for lack of privity.

5.      Plaintiffs' MMWA implied warranty claim (Count 1) is not cognizable because this action does not have 100 named plaintiffs, and because plaintiffs do not allege viable state law express or implied warranty claims.

6.      Plaintiffs lack standing to assert a nationwide unjust enrichment claim (Count 30), and their state law unjust enrichment claims fail because an express contract exists and for additional independent reasons under applicable state laws and statutes of limitation.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs initially commenced five separate class actions against GM in district courts in New Jersey and California, which plaintiffs voluntarily consolidated into one class action in the Central District of California styled *Goldstein v. General Motors*, LLC No. 3:19-cv-01778 (S.D. Cal.). GM moved to dismiss the consolidated class action on numerous grounds.  The court granted in part GM's motion to dismiss the California plaintiffs' claims (including all nationwide claims), and dismissed the non-California plaintiffs' claims for lack of personal jurisdiction over GM.  *Goldstein*, 2020 WL 1849659, at *6 (S.D. Cal. Apr. 13, 2020).[1]

On May 15, 2020, certain of the non-California plaintiffs re-filed their same claims in this action. (D.I. 1, Class Action Complaint ("CAC")). On June 22, 2020, the parties filed a Stipulation and Proposed Order Regarding Motion to Dismiss Briefing, which was granted by the Court. (D.I. 23). This is GM's Opening Brief in support of its Motion to Dismiss.

## STATEMENT OF FACTS

Plaintiffs are nineteen current owners of new and used model year 2013-2017 Cadillac ATS, SRX, and XTS vehicles equipped with CUE navigation/radio touch screen systems. CAC ¶¶ 1, 19-38. Plaintiffs reside in eleven different states: Alabama, Florida, Indiana, Kansas, Maryland, Michigan, New Jersey, New York, North Carolina, Texas, and West Virginia. *Id.*[2]

---

[1] The California plaintiffs filed an amended complaint, which GM moved to dismiss on June 17.

[2] Plaintiff Kladke is a "New York citizen who resides in Lakeview, New York" who purchased his vehicle in Florida, and is identified as a "Florida Plaintiff." *Id.* ¶¶ 22, 159, 406. His claims are analyzed under Florida law.

Plaintiffs allege that they purchased their vehicles from independent dealerships or at auction, and that each vehicle came with a 4 year/50,000 mile New Vehicle Limited Warranty.[3]

Plaintiffs allege that the CUE system is defective because the "plastic cover is prone to delaminating or separating from the touch screen glass[]" and "[w]hen this happens, the silicone-like material coalesces and forms a spider-web-like pattern on the display, which breaks the underlying circuit and prevents a user's touch from being registered." *Id*. ¶ 71. No plaintiff alleges experiencing any issues with the CUE system at the time of purchase.[4] Only after years of use did the CUE systems allegedly begin to spider-web and have issues responding.[5]

Plaintiffs allege that their CUE systems had issues responding to commands.[6] Some of the plaintiffs generically allege (1) inability to clearly see the touch screen or select desired air vents for air conditioning and heat; (2) difficulty pairing or using a Bluetooth/mobile device; and (3) obscured or impacted functionality of the back-up cameras and navigation system. *Id*. Plaintiffs do not allege specific examples or details of these issues. Nine plaintiffs do not allege that they ever sought repairs for their CUE systems,[7] and the plaintiffs who allege that they

---

[3] *Id*. ¶¶ 47-48, 119, 135, 147, 159, 172, 184, 198, 211, 223, 236, 245, 257, 266, 275, 284, 296, 308, 320, 334.

[4] *Id*. ¶¶ 121, 136, 149, 161, 174, 188, 200, 213, 225, 238, 249, 260, 268, 278, 286, 297, 310, 324, 336.

[5] *Id*. ¶¶ 122, 137, 150, 162, 173, 189, 201, 214, 226, 238, 250, 260, 268, 278, 287, 298, 311, 326, 337. One plaintiff allegedly experienced issues shortly after purchasing a new vehicle and his CUE system was replaced at no cost. *Id*. ¶ 173 (FL, Palopoli).

[6] *Id*. ¶¶ 127-30, 139-42, 152-54, 164-66, 174-76, 189-91, 202-205, 216-218, 228-230, 241,250-51, 260-61, 268-70, 278, 287-91, 300-03, 313-15, 326-27, 340-42.

[7] AL, Schellhammer; FL, Braden and Kladke; NJ, Gruchacz; NC, Cauthen and Macaisa; TX, Cox; KS and MD plaintiffs.

sought repairs had their CUE systems replaced at no cost under warranty.[8] All plaintiffs still own and operate their vehicles.[9]

Plaintiffs conclusorily allege that the "[d]efect . . . poses a serious safety risk to drivers, who can become dangerously distracted."[10] *Id*. ¶ 4. But no plaintiff alleges experiencing a safety hazard, accident or injury. Some of the plaintiffs allege that the back-up camera became "obscured"[11] but none alleges any facts or incidents where this created a safety hazard.[12] Plaintiffs also allege that certain states require drivers to use a hands-free device when talking on a cell phone while driving,[13] but none alleges that their CUE system failed when paired with a hands-free device while driving.[14] Plaintiffs allege that not all consumers whose touch screen allegedly cracked or spider-webbed experienced any other issues,[15] and some that did, allege that they noticed the touch screen was cracking or spider-webbing *before* experiencing any issues with responsiveness.[16] There are no allegations of the alleged defect manifesting without any warning.

---

[8] *Id*. ¶¶ 123 (AL, Robinson); 173 (FL, Palopoli); 190 (FL, Savage); 279 (NY, Howard); 326-27 (TX, Piazza). Three plaintiffs allegedly had their CUE systems replaced after the warranty expired and incurred out-of-pocket expenses to have the system repaired. *Id*. ¶¶ 207, 241, 251.

[9] *Id*. ¶¶ 121, 136, 149, 161, 173, 196, 200, 213, 225, 236, 256, 264, 271, 276, 286, 297, 310, 332, 336.

[10] No alleged distracted driving statistics are specific to the putative Class Vehicles. *Id*. ¶ 88.

[11] *Id*. ¶¶ 142, 166, 205, 218, 230, 291, 303, 315, 342.

[12] Allegations that a "backup camera is a required safety device in all cars" are inaccurate because that requirement applies to new vehicles manufactured after the class period. *Id*. ¶ 86, n.16.

[13] *Id*. ¶¶ 168 (NY), 178 (FL), 232 (MD), 344 (WV).

[14] Certain plaintiffs allege that the CUE system failed to operate properly when paired with their mobile device or Bluetooth. *Id*. ¶¶ 174, 250, 268. None of the plaintiffs allege that they were driving on these occasions. No plaintiff alleges any facts supporting the CUE system as a purported safety risk under these conditions.

[15] *Id*. ¶ 110(a), (c), (e), (g), (i), (k).

[16] *See, e.g., id*. ¶¶ 122, 137, 150, 162, 201, 214, 226, 287, 298, 311, 337.

Plaintiffs allege that GM "knew or should have known that the CUE [s]ystems were defective" "[w]ell before the first Class Vehicle was sold" based on a press release from 2012 discussing research that GM allegedly conducted in connection with developing the CUE system. *Id.* ¶ 95. There are no allegations that GM identified any of the alleged issues or problems in the CAC during any of its research and development. Plaintiffs also allege that "GM has known about the defect for years" through "(1) records from the National Highway Traffic Safety Administration ("NHTSA"), (2) [online] customer complaints, (3) its own records of customers' complaints, (4) dealership repair records and requests for technical assistance, (5) warranty and post-warranty claims, (6) pre- and post-release internal durability testing, and (7) [sic] other various (unidentified) sources." *Id.* ¶¶ 6, 8. Plaintiffs identify only a handful of NHTSA and online complaints, most of which do not claim to experience the alleged defect and post-date most plaintiffs' vehicle purchases. *Id.* ¶¶ 108-114. Plaintiffs do not plead *any* details regarding GM's repair records or warranty claims. *Id.* ¶¶ 115-117. They do not allege any specific facts showing that GM knew about the alleged defect at the time of sale.

Plaintiffs generally allege that they saw unidentified "advertising materials" concerning their vehicle and its various features; had unspecified discussions with a salesperson regarding the vehicle; took the vehicle for a test drive; and/or reviewed their vehicle's "features, options, and price" on the window sticker and in brochures or other materials provided at the dealership.[17] They do not identify any specific GM advertisements, any specific GM statements, or any specific GM materials that they saw or relied on in making their purchase decisions. Instead, plaintiffs generally allege that GM "advertised the CUE as improving driver safety" based on these alleged statements:

_____

[17] *Id.* ¶¶ 133, 145, 157, 170, 172, 187, 209, 221, 234, 248, 258, 273, 282, 294, 306, 318, 323, 346.

- CUE doesn't replace your smartphone or your iPod. Rather it allows consumers to securely store those mobile devices while channeling the information on those devices . . . through a central portal in your Cadillac, keeping hands on the wheel and eyes on the road.

- CUE users can manually or verbally input the entire destination address on one screen, saving time and keeping drivers focused on the road.

- [CUE] also incorporates natural language voice recognition, which allows customers to safely place calls, enter destinations, browse media, play music and control other functions simply by telling the vehicle what to do.

*Id*. ¶¶ 63- 65. No plaintiff alleges that they saw or relied on these statements in making their purchase decision.

Plaintiffs allege six types of claims based on 30 causes of action: (1) fraudulent concealment claims,[18] (2) various state consumer protection claims,[19] (3) express warranty claims,[20] (4) UCC implied warranty of merchantability claims,[21] (5) a Magnuson-Moss Warranty Act claim,[22] and (6) unjust enrichment claims.[23] Plaintiffs allege claims on behalf of a putative nationwide class and eleven putative statewide sub-classes of purchasers and lessees of model year 2013-2017 Cadillac ATS, SRX, and XTS vehicles, and model year 2014-2017 Cadillac CTS, ELR, and Escalade vehicles. *Id*. ¶¶ 1, 348.

Plaintiffs allege that they suffered "an ascertainable loss" including "paying more for the vehicle than it was worth, future attempted repairs, and the diminished value of [their] vehicle."[24]

---

[18] Count 29 (each of the 11 states).

[19] Counts 2 (AL), 3 (FL), 6 (IN), 8 (KS), 10 (MD), 12 (MI), 15 and 16 (NJ), 19 and 20 (NY), 22 (NC), 26 (TX), 27 (WV).

[20] Counts 4 (FL), 13 (MI), 18 (NJ), 24 (TX).

[21] Counts 5 (FL), 7 (IN), 9 (KS), 11 (MD), 14 (MI), 17 (NJ), 21 (NY), 23 (NC), 25 (TX), 28 (WV).

[22] Count 1 (nationwide).

[23] Count 30 (nationwide and each of the 11 states).

[24] *Id*. ¶¶ 132, 144, 156, 169, 180, 195, 208, 220, 233, 242, 255, 264, 271, 280, 293, 305, 317, 331, 345.

They seek a declaration that GM "is financially responsible for notifying all Class Members about the defective nature of the CUE System, including the need for periodic inspection and maintenance," requiring GM to comply with the challenged state and federal laws and "make all the required disclosures[,]" and demanding GM "perform a recall[] and repair vehicles." *Id*. at p. 155-56 (B), (D), (L).

Plaintiffs also seek an injunction against future conduct, and requiring GM to either (1) "remove and replace" Class Members' CUE Systems with "a suitable alternative product," (2) provide a "replacement CUE System that does not contain the defects alleged," and/or (3) "reform its warranty . . . to cover the injury alleged and to notify all Class members[.]" *Id*. at p. 155 (C). Plaintiffs seek "any and all remedies" available under the challenged state and federal laws, including compensatory, exemplary, and statutory damages, interest, restitution, disgorgement, attorneys' fees and costs. *Id.* at p. 155-56 (E)-(L).

## LEGAL STANDARDS

A motion to dismiss should be granted where plaintiffs are unable to plead "'enough facts to state a claim to relief that is plausible on its face.'" *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). More is required than "labels and conclusions, and a formulaic recitation of a cause of [action's elements]," *Twombly*, 550 U.S. at 555, and "unsupported conclusions and unwarranted inferences[]" need not be accepted as true. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Allegations of fraud, including claims based on consumer protection statutes alleging fraudulent or deceptive conduct, must be pled with particularity. Fed. R. Civ. P. 9(b). A plaintiff must include facts identifying the "who, what, when, where, and how" of the allegedly

fraudulent conduct. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 308 (3d Cir. 2016); *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016).

## <u>ARGUMENT</u>

### I.    PLAINTIFFS' FRAUD CLAIMS FAIL ON MULTIPLE GROUNDS.

Plaintiffs' common law fraudulent concealment claims alleged under the laws of eleven different states (Count 29) fail because they do not meet the particularity requirements of Rule 9(b); do not establish that GM knew of the alleged defect at the time of sale; and do not allege facts to support that GM had a duty to disclose.

### A.    Plaintiffs Do Not Meet The Rule 9(b) Particularity Requirements.

Plaintiffs allege "GM has concealed a dangerous defect[.]" CAC ¶ 1. To state a viable fraudulent concealment claim, plaintiffs must plead facts, with the particularity required under Rule 9(b), plausibly showing that: (1) GM had a legal duty to disclose (2) a material fact (3) that plaintiffs could not discover without GM disclosing it, (4) that GM intentionally failed to disclose that fact, and (5) plaintiffs were harmed by relying on the non-disclosure. *Polhill v. FedEx Ground Package Sys*., 604 F. App'x 104, 108 n.2 (3d Cir. 2015) (citing *Rosenblit v. Zimmerman*, 166 N.J. 391, 766 A.2d 749, 757-58 (2001)); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (fraud claims must be pled with particularity).[25]

Rule 9(b) requires that the complaint specify the circumstances constituting fraud,

---

[25] The elements of a fraudulent concealment claim are similar under each state's law. *See Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*, 244 So. 3d 896, 930 (Ala. 2017); *Koski v. Carrier Corp*., 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017); *Armstrong v. Deere & Co.*, 2017 WL 4168485, at *7 (S.D. Ind. Sept. 20, 2017); *Kestrel Holdings I, L.L.C. v. Learjet Inc*., 316 F. Supp. 2d 1071, 1078 (D. Kan. 2004); *Crystal v. Midatlantic Cardiovascular Assocs., P.A.*, 133 A.3d 1198, 1208-09 (Md. 2016); *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013); *De Sole v. Knoedler Gallery*, LLC, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013); *Friedland v. Gales*, 509 S.E.2d 793, 796-97 (N.C. Ct. App. 1998); *Lilly v. Tex. Dep't of Criminal Justice*, 472 S.W.3d 411, 420 (Tex. App. 2015); *Roney v. Gencorp*, 431 F. Supp. 2d 622, 637 (S.D.W. Va. 2006).

including who made a misrepresentation, what is false or misleading about the statement, and why it is false. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992). Plaintiffs do not adequately plead "the who, what, when, where, and how" of any alleged misrepresentation with the particularity required by Rule 9(b). *Moore*, 812 F.3d at 308 (3d Cir. 2016).

The CAC alleges that plaintiffs reviewed the "window sticker," "advertising materials," and/or the "Cadillac webpage" or other third-party websites before purchasing their vehicle.[26] Aside from containing generic information about the "vehicle's features, options, and price,"[27] plaintiffs do not allege any *details* about the information that they reviewed. Plaintiffs do not identify a specific misrepresentation in any GM materials that they relied on, or any facts to support that the information in those materials was false. Such generic allegations are inadequate under Rule 9(b). *See, e.g., Williams v. Scottrade, Inc.*, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (allegations of "generally" misrepresenting in "'advertisements, marketing materials, and sales message[s]'" insufficient).

Plaintiffs make vague and conclusory allegations that they "discussed" the vehicle with a dealership salesperson and/or test drove the vehicle, and that GM should have "directed its authorized dealership salespeople to disclose the Defect."[28] Certain plaintiffs allege that they discussed with the dealer "how to operate the CUE," but they do not allege the substance of these communications or identify any GM misrepresentation that they relied on.[29] *Shapiro*, 964 F.2d at 284 (Rule 9(b) requires pleading "a specific false representation of material fact[.]").

---

[26] CAC ¶¶ 133, 145, 157, 170, 172, 187, 209, 221, 234, 248, 273, 282, 294, 306, 318, 323, 346. MI plaintiff Blanchard and NJ plaintiff Gruchacz do not allege reviewing any materials.

[27] *Id*. ¶¶ 133, 145, 157, 170, 209, 234, 318.

[28] CAC ¶¶ 133, 145, 157, 170, 172, 187, 209, 221, 234, 248, 258, 273, 282, 294, 306, 318, 323, 346. Michigan plaintiff Blanchard does not make any allegations.

[29] *See, e.g., id*. ¶¶ 133, 170, 187, 234, 294, 346.

9

The CAC also contains vague allegations of GM's description of the CUE system (CAC ¶ 49), a general reference that "GM makes available online material information regarding the characteristics, benefits, and quality of the Class Vehicles" (¶ 91), and a handful of statements they allege GM made to "[p]romote[] the CUE's safety [f]eatures" (¶¶ 63-65). At most, plaintiffs allege that GM made general statements about the performance, functionality, or reliability of a vehicle.  None of these statements concerns the durability of the touch screen or indicates one way or the other the likelihood that the touch screen will crack, spider-web, or bubble. And plaintiffs have not shown how these general statements are somehow false. They are inactionable puffery. *See In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at \*10 (S.D.N.Y. July 15, 2016) ("courts have repeatedly held that general statements about a brand's quality, or a product's safety, are too vague or lacking in factual content to be actionable.").[30]

For these alleged general GM statements, plaintiffs do not say who made them; the date, time and place of the statements; whether and how plaintiffs heard or saw them; or what steps if any plaintiffs took in reliance on them. Indeed, the named plaintiffs do not allege that they themselves viewed or relied on any of these general statements. This is insufficient under Rule 9(b). *See Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at \*7 (D.N.J. Dec. 29, 2011) ("Plaintiff cannot simply reference a statement . . . without providing the date when the statement was made or at what point – if ever – [p]laintiff was exposed to that statement."); *Hughes*, 2011 WL 2976839, at \*13 ("[P]laintiffs should be able to allege the specific advertisements, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation and when it was so advertised.").

---

[30] *See also Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at \*12 (D.N.J. July 21, 2011) (statements about excellent picture quality were non-actionable puffery); *Tatum v. Chrysler Grp. LLC*, 2011 WL 1253847, at \*4 (D.N.J. Mar. 28, 2011) ("Absent specific claims as to the braking system, Defendant's general advertising was puffery . . .").

    **B.**    **Plaintiffs Do Not Allege That GM Had Exclusive Knowledge Of The Alleged Defect At The Time Of Sale.**

Plaintiffs do not allege any facts plausibly establishing that GM had exclusive knowledge of the alleged defect at the time of sale, which is a core element of their claims under the laws of all states. *See Alban v. BMW of N. Am.*, 2011 WL 900114 at *10 (D.N.J. Mar. 15, 2011).[31] Plaintiffs summarily allege that GM "has known about the [d]efect for years" and speculate that GM knew of a widespread defect in all putative Class Vehicles based on (1) pre- and post-sale testing; (2) technical service bulletins that GM issued to its dealers; (3) consumer complaints made to GM, NHTSA and on third party websites; and (4) unidentified repair and warranty data. CAC ¶¶ 8-9. Plaintiffs do not allege facts in support of these categories, and their allegations do not raise a plausible inference that GM had pre-sale knowledge of the alleged defect.

    **1.**    **"Pre- and Post-Sale Testing."**

Plaintiffs make conclusory allegations that GM knew of a defect "[w]ell before the first Class Vehicle was sold," through press releases discussing generally the "research [behind the CUE System]" and tasks performed by the "CUE team, made up of designers, engineers and software developers." *Id*. ¶ 95. Plaintiffs plead no facts in support of that conclusion or allege any facts concerning post-sale testing.

These generic, conclusory allegations are insufficient to establish GM knowledge. *See Greene v. BMW of N. Am.*, 2012 WL 5986461, at *7 (D.N.J. Nov. 28, 2012) (allegations based on product testing are "ungrounded speculation[]"); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017) (collecting cases rejecting generic allegations based on testing and

---

[31] *See Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*, 390 So. 2d 601, 616 (Ala. 1980); *Koski*, 347 F. Supp. 3d at 1196; *Armstrong*, 2017 WL 4168485 at *7; *Kestrel*, 316 F. Supp. 2d at 1078; *Crystal*, 133 A.3d at 1208-09; *MacDonald*, 724 F.3d at 665; *De Sole*, 974 F. Supp. 2d at 314; *Friedland*, 509 S.E.2d at 796-97; *Lilly*, 472 S.W.3d at 420; *Roney*, 431 F. Supp. 2d at 637.

analysis); *see also Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) ("[C]onclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient.").

### 2. Technical Service Bulletins.

Plaintiffs allege that GM had knowledge of a defect based on multiple iterations of a single technical service bulletin ("TSB") it issued to dealers on the CUE system. CAC ¶¶ 97-103. Plaintiffs allege that a TSB was issued in December 2014, which indicated "*[s]ome customers may report that their radio screen appears bubbled, cracked, or is delaminating*" and "*if this concern is encountered, replace the ICS (Integrated Center Stack)[.]*" *Id*. ¶ 98 (emphasis added). Subsequent iterations were allegedly issued over the next three years and were nearly identical to the first bulletin other than expanding the vehicles involved. *Id*. ¶¶ 100-103.

The TSBs do not plausibly support that GM had pre-sale knowledge because they do not mention any of the alleged "safety hazards" that are the crux of the alleged defect in the CAC. The TSBs make no mention of any problems with the responsiveness or functionality of the CUE system, or reference any customers experiencing safety issues or concerns. Courts regularly dismiss fraud claims where, as here, the TSBs relied upon did not reference the symptom plaintiffs complain about in their vehicles. *See, e.g*., *Mandani*, 2019 WL 652867, at *7 (dismissing fraud claim and explaining "[t]his Court cannot conclude that one TSB notice related to noise issues, standing alone, means that Defendants had knowledge of a more-serious safety defect."); *Sloan v. Gen. Motors, LLC*, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (dismissing fraud claim and rejecting reliance on a TSB where it addressed "the general problem of excessive oil consumption, and does not mention the alleged specific defect.").

The multiple TSBs issued over the course of several years demonstrate that GM's understanding of the issue and scope of vehicles impacted evolved; it does not plausibly support that GM knew *all* Class Vehicles were defective when the first TSB was issued in 2014. At most, these TSBs suggest *some* customers experienced problems; these TSBs do not suggest that repairs were necessary for *all* CUE systems in every Class Vehicle.

Also, these TSBs were issued *after* eight of the plaintiffs purchased their vehicles in 2012-2014.[32] They are not evidence GM knew of any alleged defect at the time of plaintiffs' purchases. *See, e.g., Dawson v. Gen. Motors LLC*, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) (service bulletins issued *after* plaintiffs' purchased vehicles were not evidence GM knew of alleged defect at time of purchase, and those issued *before* were insufficient to demonstrate GM's knowledge).

### 3.    Consumer Complaints.

Plaintiffs attempt to establish GM's knowledge of the alleged defect with conclusory allegations of consumer complaints made to GM, "numerous complaints" to NHTSA, and "scores of consumer complaints" on third-party websites.  CAC ¶¶ 108, 110.

Plaintiffs do not identify any alleged complaints made directly to GM. The CAC alleges 33 NHTSA and online complaints that span a five-year period – roughly *six to seven* complaints per year. Some are duplicates[33] or include only a response to an alleged complaint.[34] Many of these complaints do not reference any alleged safety defect. *See, e.g., id.* ¶ 108(a) (complaining of "scratches" on the touch screen); ¶ 110(c) (complaining of screen "cracking" but noting "the

---

[32] CAC ¶¶ 19 (AL, Robinson), 21 (FL, Braden), 24 (FL, Savage), 25 (IN, Bradley), 30 (MI, Tubbs), 31 (NJ, Gruchacz), 33 (NY, Howard), 36 (TX, Cox).

[33] At least one of the NHTSA complaints cited is a duplicate. *Id.* ¶ 108(c) and (e). The CAC lacks sufficient information to determine whether any other complaints cited are duplicates.

[34] *Id.* ¶¶ 110 (m), 111(e) and (f).

CUE still works fine").[35] And any complaints referencing issues with responsiveness or functionality were made *after* the majority of plaintiffs purchased their vehicles in 2012-2016. *Id*. ¶¶ 108, 113-114 (citing complaints from May 2016-November 2018).[36] In short, plaintiffs have identified only a handful of complaints made before their vehicle purchases that complain of the alleged defect.

This does not establish GM's knowledge of an alleged "innate and serious safety defect" in the CUE system (*id*. ¶ 3), let alone a defect across *hundreds of thousands* of putative class vehicles. *See Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect."); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017) ("unusually high number of complaints" are necessary for an inference of a defendant's pre-sale knowledge).[37]

Plaintiffs allege that these are "just a small sampling of the numerous complaints" (CAC ¶ 108), but they do not allege a total number of complaints or assert any facts to suggest that "numerous" unidentified complaints somehow establish GM's knowledge of the alleged safety defect. Because even the handful of cherry-picked complaints plaintiffs identified do not

---

[35] None of the complaints allegedly posted to internet forums reference any alleged safety defect. Where no complaint is provided, nothing in the response suggests a safety issue. *Id.* ¶¶ 110 (m) (noting individual is "experiencing [a] concern with the CUE display screen"); 111(e) and (f).

[36] *Id.* ¶¶ 19-20 (AL, Robinson and Schelhammer); 22, 24 (FL, Kladke and Savage); 25 (IN, Bradley); 27 (MD, Glenn); 30 (MI, Tubbs); 31 (NJ, Gruchacz); 34 (NC, Cauthen); 36-37 (TX, Cox and Piazza).

[37] *See also Berenblat v. Apple, Inc.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (hundreds of complaints posted on Apple's website merely established that some consumers were complaining); *Blissard v. FCA US LLC*, 2018 WL 6177295 at *13 (C.D. Cal. Nov. 9, 2018) (requiring that plaintiffs allege number of complaints was "'significant'" and "'beyond the norm'" to defendant); *Hall v. Gen. Motors, LLC*, 2020 WL 1285636 at *4 (E.D. Mich. Mar. 18, 2020) (hundreds of NHTSA complaints insufficient even where plaintiffs alleged GM "monitored" NHTSA's complaints) (appeal filed); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("[C]ustomer complaints in and of themselves [do not] adequately support an inference that a manufacturer was aware of a defect . . .").

reference the same issues alleged in the CAC, it is not reasonable to infer that many other complaints on the alleged issue exist.

### 4.      Repair and Warranty Data.

Plaintiffs make vague and conclusory allegations that GM "knew or should have known" about the alleged defect "based on the large number of repairs performed." *Id*. ¶¶ 90, 115. Plaintiffs do not allege any facts concerning the number of repairs purportedly performed, or that such number is sufficiently "large" that GM should have known that a defect existed in all CUE systems across different Cadillac make and model year vehicles. Plaintiffs do not allege any facts about how GM's "special customer care program with dedicated support staff trained with expertise on CUE Systems" has anything to do with whether GM had knowledge of the alleged defect before plaintiffs' vehicle purchases. *Id* ¶ 116. There are no allegations concerning what the customer care program discussed with consumers, whether anyone complained, and, if so, when they complained and what they complained about.

Plaintiffs' allegations of GM's knowledge based on unidentified repair and warranty data and the creation of a customer care program are mere speculation. *See Greene*, 2012 WL 5986461, at *7 (allegations based on product testing are "ungrounded speculation[]"); *Beck*, 273 F. Supp. 3d at 753 ("generic allegations" of "access to 'testing' and 'analysis'" insufficient) (collecting cases).[38]

---

[38] *See also Mandani*, 2019 WL 652867, at *8 ("[C]onclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient."); *Stewart v. Electrolux Home Prods., Inc.*, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018) (rejecting "presumption of knowledge" based on "general allegations about [defendants'] internal testing or quality controls"); *Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (dismissing fraud claim where "generalized assertion" of knowledge based on "unspecified 'pre-release testing data' and 'aggregate data from Honda dealers'").

C.    **Plaintiffs Do Not Allege Facts Establishing That GM Had A Duty To Disclose.**

Plaintiffs do not allege facts establishing that GM had a duty to disclose—a necessary element of their fraudulent concealment claims under each state law. *See Polhill*, 604 F. App'x at 108 n.2; *see also* cases cited *supra* at Section I(A) n. 25.

First, plaintiffs allege that GM owed a duty to disclose because GM "consistently marketed their Class Vehicles as safe" and "the telling of a half-truth calculated to deceive is fraud." CAC ¶ 761. None of the GM statements by GM are misleading. They merely describe how the CUE system functions, including the information that can be accessed, the ability to pair your mobile device, the use of voice recognition, and the options to access the navigation system. CAC ¶¶ 63-65; *see, e.g., Apotex Corp. v. Merck & Co.,* 229 F.R.D. 142, 149 (N.D. Ill. 2005) (no duty based on "half-truth[s]" where statements made were true). Plaintiffs do not allege any plausible facts that GM omitted information to deceive plaintiffs; they do not even allege they were exposed to these statements.

Second, plaintiffs' thread-bare allegations that GM had a duty based on its superior knowledge are unsupported (CAC ¶¶ 90, 762; *see* Section I(B)), and contradicted by other allegations in the CAC that information about the alleged defect was publicly available, such as the "numerous" online complaints and publicly available TSBs. *Id.* ¶¶ 97-98,108-114, n.20.

Third, plaintiffs' conclusory allegation that GM had a duty because it "actively concealed and/or suppressed" the defective nature of the Class Vehicles and their CUE systems, is insufficient. *Id.* ¶ 764. They have not alleged any facts to support an affirmative act of concealment; they do not identify who specifically at GM was purportedly aware of any concealed facts, the source of that knowledge, or any actions GM took to conceal any facts. *See Coba v. Ford Motor Co.*, 2013 WL 244687, at *12 (D.N.J. Jan. 22, 2013) (requiring allegations

16

of "instances of active concealment"). Courts "will not consider [p]laintiffs' legal conclusion of duty to be true without any factual allegations to support such a conclusion." *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 2007 WL 2421480, at *8 (E.D. Mich. Aug. 24, 2007).

Their allegations of active concealment are also contradicted by other allegations in the CAC that (1) GM issued TSBs "acknowledging the Defect in the Class Vehicles" that are publicly available on NHTSA's website (¶¶ 97-98, n. 20), and (2) plaintiffs who went to a dealer for repairs either had their CUE system replaced under warranty (¶¶ 123, 173, 190-91, 279, 326-27), or were told they would have to pay the cost of repair if not under warranty (¶¶ 207, 241, 251, 269, 338). *Cf. Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. Mar. 31, 2010) (allegations of fraudulent concealment sufficient where plaintiffs "contacted Sears for service of their defective Machines and [they] were either told the Machines were not defective or denied free service or replacement of the defective parts.").

Further, New York precludes the finding of a duty to disclose on remote manufacturers for consumers who, like New York plaintiff, purchased a vehicle from an independent dealership. CAC ¶ 275; *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 237 (S.D.N.Y. 2015).

D.     **The Economic Loss Doctrine Bars Certain Plaintiffs' Claims.**

The economic loss doctrine prohibits a purchaser of a defective product from using tort law to recover purely economic losses. *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir. 1995). Plaintiffs here seek to recover economic damages – *i.e.*, "paying more

for the vehicle than it was worth," "diminished value of [their] vehicle," and "repairs" – for the alleged defect; they allege no personal injury or property damage.[39]

Under Florida, Maryland, Michigan, New Jersey, New York, and Texas law, the economic loss rule bars plaintiffs' fraudulent concealment claims.[40]

## II. PLAINTIFFS' STATE LAW CONSUMER PROTECTION CLAIMS FAIL FOR MULTIPLE REASONS.

Plaintiffs allege thirteen claims under the consumer protection statutes of eleven different states,[41] which sound in fraud and therefore fail for the same reasons as their fraud claims, as well as for additional reasons under specific state laws.

### A. Plaintiffs Do Not Adequately Plead Required Elements.

Plaintiffs' conclusory allegations do not adequately plead the elements of their consumer protection claims with the specificity required by Rule 9(b). *See Frederico*, 507 F.3d at 200-02 (NJCFA claims must be pled with particularity); *Wozniak v. Ford Motor Co*., 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (state law "consumer protection claims sounding in fraud must meet the heightened pleading standard of" Rule 9(b)).[42]

---

[39] CAC ¶¶ 156, 169, 180, 195, 233, 242, 255, 264, 271, 280, 317, 331.

[40] *See Burns v. Winnebago Indus., Inc*., 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013); *Lloyd v. Gen. Motors Corp*., 916 A.2d 257, 266 (Md. 2007); *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 532 N.W.2d 541, 544-55 (Mich. Ct. App. 1995); *Noble v. Porsche Cars N. Am., Inc*., 694 F. Supp. 2d 333, 336 (D.N.J. 2010); *Orlando v. Novurania of Am., Inc*., 162 F. Supp. 2d 220, 226 (S.D.N.Y. 2001); *Heil Co. v. Polar Corp*., 191 S.W.3d 805, 815-17 (Tex. Ct. App. 2006).

[41] Count 2 (AL), 3 (FL), 6 (IN), 8 (KS), 10 (MD), 12 (MI), 15 and 16 (NJ, CFA and TCCWNA), 19 and 20 (N.Y. Gen. Bus. Law § 349 and § 350), 22 (NC), 26 (TX), 27 (WV).

[42] The NY General Business Law claims are deficient under Rule 8 because they fail to plead deceptive advertising or causation with specificity—conclusory allegations are not enough. *Wright v. Publishers Clearing House, Inc.*, 2019 WL 1177716, at *4 (E.D.N.Y. Mar. 12, 2019).

Each plaintiff must specifically allege reliance and/or causation under applicable law.[43] Here, no plaintiff alleges personally encountering, relying on, or purchasing a vehicle as a result of any specific GM advertisement. Plaintiffs generally allege that they saw unidentified "advertising materials" concerning their vehicle and its various features; had unspecified discussions with a salesperson regarding the vehicle; took the vehicle for a test drive; and/or reviewed their vehicle's "features, options, and price" on the window sticker and in brochures or other materials provided at the dealership.[44] They do not identify any specific GM advertisements, any specific GM statements, or any specific GM materials that they saw or relied on in making their purchase decisions.

There are only a few GM statements pled in the CAC, which allege the "CUE as improving driver safety" (¶¶ 63-65), but no plaintiff alleges that they saw or relied on these statements in making their purchase decision, or alleges how the statements are somehow false. This is insufficient. *See Glass*, 2011 WL 6887721, at *11-12; *Hughes*, 2011 WL 2976839, at *13 ("plaintiffs should be able to allege the specific advertisements, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation and when it

---

[43] Counts 2 (AL), 6 (IN), 8 (KS), 10 (MD), 12 (MI), 20 (NY), 26 (TX) require reliance and causation. *Billions v. White & Stafford Furniture Co., Inc.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988); Ind. Code Ann. § 24-5-0.5-4; *Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1177 (D. Kan. 2017); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 319 (D. Md.), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Rosipko v. FCA US, LLC*, 2015 WL 8007649, at *3 (E.D. Mich. Dec. 7, 2015); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (N.Y. Gen. Bus. Law § 350); *Daugherty v. Jacobs*, 187 S.W.3d 607, 615 (Tex Ct. App. 2006).

Counts 3 (FL), 15 and 26 (NJ), 19 (NY), 22 (NC), and 27 (WV) require only causation. *See SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*, 2012 WL 360170, at *5 (M.D. Fla. Feb. 2, 2012); *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 580 (N.J. 2010); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (N.Y. Gen. Bus. Law § 349); *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000); *White v. Wyeth,* 705 S.E.2d 828, 837 (W. Va. 2010).

[44] *Id*. ¶¶ 133, 145, 157, 170, 172, 187, 209, 221, 234, 248, 258, 273, 282, 294, 306, 318, 323, 346. Michigan plaintiff Blanchard does not make any of these allegations.

was so advertised."); *Rosipko*, 2015 WL 8007649, at *3 (dismissing consumer fraud claim for failure to allege "the precise content of what was represented" and "when, where, or how Plaintiffs ever heard or saw any purported representation.").

New Jersey plaintiffs' Consumer Fraud Act claim also fails because they admit that they did not seek repairs during the warranty period (CAC ¶¶ 260, 269), and therefore cannot allege they suffered an ascertainable loss. *Nobile v. Ford Motor Co.*, 2011 WL 900119 at *6 (D.N.J. Mar. 14, 2011) ("where a vehicle component has outperformed the warranty period, the plaintiff cannot meet the pleading requirements for an 'ascertainable loss'"). They have also failed to allege facts showing GM "knew with certainty that the product at issue or one of its components was going to fail." *Alban*, 2011 WL 900114 at *10; *Glass*, 2011 WL 6887721, at *8 ("unless a defendant manufacturer knows with certainty that a product *will* fail, it does not violate the NJCFA by failing to inform consumers of the *possibility* of failure") (internal quotation omitted).

B.      **Certain Plaintiffs' Claims Are Time-Barred.**

Certain Alabama, Florida, Indiana, Maryland, New York and Texas plaintiffs' claims are time-barred. Plaintiffs allege that GM made misrepresentations and omissions, and plaintiffs suffered injury, at the time of purchase;[45] therefore, their claims accrued at that time.

Plaintiffs brought their claims in 2019.[46] The Indiana and Texas plaintiffs failed to bring their claims within two years of vehicle purchase;[47] the Maryland and New York plaintiffs failed

---

[45] *Id.* ¶¶ 121, 136, 149, 161, 173, 188, 200, 225, 277, 310, 324.

[46] *See Gruchacz v. Gen. Motors, LLC*, No. 3:19-cv-16303 (D. NJ) Class Action Complaint filed August 2, 2019 (D.I. 1 asserting claims on behalf of Gruchacz); *Uyenoyama v. Gen. Motors, LLC*, No. 2:19-cv-07668 (C.D. Cal.), Class Action Complaint filed September 4, 2019 (D.I. 1) (asserting claims on behalf of Robinson, Schelhammer, Braden, Kladke, Bradley, Conroe, Toda, Glenn, Cauthen, Macaisa, Cox); *Goldstein v. Gen. Motors, LLC*, No. 3:19-cv-01778 (S.D. Cal.), Class Action Complaint filed September 16, 2019 (D.I. 1) (asserting claims on behalf of Savage, Tubbs, Piazza); *Tyson v. Gen. Motors, LLC*, No. 2:19-cv-09188 (C.D. Cal.), Class Action Complaint filed October 24, 2019 (D.I. 1) (asserting claims on behalf of Tyson, Howard,

to bring their claims within three years;[48] and Florida plaintiffs Braden and Savage failed to bring their claims within 4 years.[49] Alabama plaintiffs' claims are also time-barred under both the one-year and four-year limits.[50]

Plaintiffs do not plausibly allege tolling based on fraudulent concealment for the same reasons their fraudulent concealment claims fail (*see* Section I). Plaintiffs' claims are also not subject to the discovery rule because they make no factual allegations of "time and manner of discovery," and their conclusory allegation that they "exercise[d] [] due diligence" (CAC ¶ 357), is likewise insufficient. *See Melcher v. Wiggins*, 2014 WL 1600511, at *1 (S.D. Tex. Apr. 21, 2014) ("In the absence of factual allegations that [plaintiff] satisfied his duty to investigate, this Court may not apply the discovery rule . . . .").[51] Plaintiffs also allege that information about the alleged defect was available to the public for years, making it plausible that they *could* have discovered the alleged defect sooner. CAC ¶¶ 97-98, 109-117 (citing publicly-available material).

---

Blanchard); *Palopoli v. Gen. Motors, LLC*, 2:19-cv-08770 (C.D. Cal.) Class Action Complaint filed October 11, 2019 (D.I. 1) (asserting claims on behalf of Palopoli).

[47] CAC ¶¶ 25, 36-37; Ind. Code Ann. § 24-5-0.5-5(b); Tex. Bus. & Com. Code § 17.565.

[48] CAC ¶¶ 27, 33; *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (both § 349 and § 350 claims); Md. Code Ann., Cts. & Jud. Proc. § 5–101.

[49] CAC ¶¶ 21, 24; *S. Motor Co. of Dade Cty. v. Doktorczyk*, 957 So. 2d 1215, 1217-18 (Fla. 3d. Dist. Ct. App. 2007).

[50] CAC ¶¶ 19-20; Ala. Code Sec. 8-19-14 (one year after discovery of deceptive act or practice, but in no event more than four years from date of transaction). Alabama plaintiff Robinson purchased his vehicle in 2014 and plaintiff Schellmacher experienced issues in June 2018.

[51] Plaintiffs must allege a special relationship imposing a duty to disclose or active concealment of the alleged defect by GM under certain state laws. *See Campbell v. Upjohn Co.*, 498 F. Supp. 722, 728 (W.D. Mich. 1980); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734 at *6 (S.D. Fla. Dec. 5, 2013) (Florida law requires plaintiffs to plead successful concealment of the cause of action). Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers, *Coba*, 2013 WL 244687, at *12 (New Jersey law).

C.      **Consumer Protection Claims Fail On State-Specific Grounds.**

The Kansas, Maryland, Michigan, New Jersey TCCWNA, and North Carolina consumer protection claims fail for additional reasons.[52]

**Kansas:** Monetary relief is unavailable under the Kansas Consumer Protection Act (Kan. Stat. § 50-634(c)), and therefore the Kansas plaintiff's claim for damages fails as a matter of law (Count 8). CAC ¶ 499 (seeking actual damages). *See Hammer v. Sam's E., Inc.*, 2013 WL 3756573, at *3, n. 6 (D. Kan. July 16, 2013) (recovery of damages in a class action prohibited).

**Maryland:** For a Maryland Consumer Protection Act claim (Count 10), a plaintiff must articulate a "'cognizable injury'" that is "'objectively identifiable.'" *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621 (D. Md. 2014). Maryland plaintiff alleges that he "suffered injury in fact" because he either "would not have purchased, or would have paid significantly less, for [his] [v]ehicle[]." CAC ¶ 520. Under Maryland law, allegations that a plaintiff would not have purchased the product in question or would not have paid as much are insufficient to state a claim. *Chambers*, 43 F. Supp. 3d at 621-22 (dismissing MCPA claim alleging same injury).

**Michigan:** Michigan's consumer protection statute exempts motor vehicle sales, and therefore plaintiffs' claim fails as a matter of law (Count 12). Michigan courts hold that motor vehicle sales are exempt from the Michigan CPA because they are "specifically authorized under" the Michigan Vehicle code. *See Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799-800 (E.D. Mich. 2019); *Chaudoin v. Thor Motor Coach, Inc.*, 2017 WL 3485803, at *24 (E.D. Mich. Aug. 15, 2017).

---

[52] Plaintiffs previously conceded that they could not state a consumer protection claim under Kansas or Michigan law. *Goldstein*, Pls.' Opp. to Def. Motion to Dismiss (D.I. 37) at 24, n.24.

**New Jersey:** New Jersey's Truth-in-Consumer, Contract, Warranty and Notice Act does not establish consumer rights or seller responsibilities, but rather "bolsters rights and responsibilities established by other laws." *Watkins v. DineEquity, Inc.,* 591 F. App'x 132, 134,138 (3d Cir. 2014) (quotation omitted) (to state a TCCWNA claim plaintiff must allege a violation of a clearly established right under state or federal law). New Jersey plaintiffs' TCCWNA claim (Count 16) is based on their NJCFA claim (CAC ¶ 603), and fails for the same reasons. *See Truglio v. Planet Fitness, Inc.,* 360 F. Supp. 3d 274, 279 (D.N.J. 2018) (dismissing TCCWNA claim where no viable NJCFA claim).

**North Carolina:** North Carolina's Unfair or Deceptive Trade Practices Act bars claims for solely economic damages. *Bussian v. DaimlerChrysler Corp*., 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006); *Buffa v. Cygnature Constr. & Dev., Inc*., 2016 WL 7984216, at *7 (N.C. Ct. App. Dec 30, 2016). The North Carolina plaintiffs seek damages for "overpayment and diminution in value of [their] [v]ehicles," "exemplary damages, attorneys' fees and costs" (CAC ¶ 673), and thus their claim fails as a matter of law.

## III.   PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL.

Plaintiffs' Florida (Count 4), Michigan (Count 13), New Jersey (Count 15), and Texas (Count 33) express warranty claims fail.

### A.   Plaintiffs Do Not Allege They Experienced the Alleged Defect Or Sought Repairs During the Warranty Period.

Plaintiffs have not pled viable claims for breach of GM's Limited Warranty because they do not allege that they (1) experienced the alleged defect during the warranty period; (2) presented their vehicles to GM for repair during the warranty period; and (3) GM refused or failed to repair their vehicles.

23

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). GM's Limited Warranty is for "4 years or 50,000 miles, whichever comes first," and "begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period." CAC ¶ 48. To obtain warranty coverage, plaintiffs have to "take the vehicle to a Cadillac dealer facility within the warranty period and request the needed repairs." *Id*.

Courts routinely dismiss claims for breach of a limited warranty such as this where plaintiffs "fail to allege that they sought service for the [] equipment in their vehicle [and] actually incurred any problems . . . within the durational limits specified in their respective [] warranties." *In re OnStar Contract Litigation*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009); *Duquesne Light Co.*, 66 F.3d at 616 ("'latent defects' discovered after the term of the warranty are not actionable."). Here, none of the plaintiffs adequately pleads that they experienced the alleged defect during the warranty period.

Michigan plaintiff Tubbs did not take her vehicle for repair until *at least a year* after the warranty expired.  CAC ¶¶ 245, 251. Michigan plaintiff Blanchard, and New Jersey plaintiff Tyson purchased used vehicles and do not allege their vehicles were within the warranty period when they took them to the dealership for repair.  *Id*. ¶¶ 236, 241, 266, 269.

Florida plaintiffs Braden and Kladke, New Jersey plaintiff Gruchacz, and Texas plaintiff Cox do not allege *ever* taking their vehicles to a dealership for repairs and do not allege experiencing any issues with their CUE systems until years after the warranty period expired.[53]

Conversely, Florida plaintiffs Palopoli and Savage, and Texas plaintiff Piazza admit their CUE systems were replaced under the GM warranty at no cost. *Id*. ¶¶ 173, 190, 326-27. Texas

---

[53] *Id*. ¶¶ 150, 162, 260-61, 311. Plaintiff Gruchacz's conclusory allegation that her vehicle was under warranty when she first experienced issues with her CUE system is insufficient. *Id*. ¶ 260.

plaintiff Piazza does not allege any ongoing issues with her CUE System, and the other plaintiffs do not allege going back to the dealerships or having any subsequent issues repaired. *Id.*

Plaintiffs' conclusory allegations that GM's warranty is unconscionable and unenforceable (*id.* ¶ 429) are insufficient to avoid dismissal. *See Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 320-21 (6th Cir. 2013). Plaintiffs do not plead sufficient facts to plausibly allege that GM had knowledge of the defect (*see* section I(B)), and in any event, an "allegation that [GM] knew of a latent defect at the time it issued [the] [w]arranty, even if true, does not render the warranty unconscionable." *Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 483 (D.N.J. 2017); *Hall*, 2020 WL 1285636 at *13 (holding knowledge alone does not render a warranty's durational limits unconscionable).

Likewise, general allegations that the "time limits contained in GM's warranty period" are unconscionable because of a "gross disparity in bargaining power" (CAC ¶ 429), are not sufficient. *See Alban*, 2011 WL 900114, at *10; *Majdipour v. Jaguar Land Rover N. Am. LLC*, 2013 WL 5574626, at *20 (D.N.J. Oct. 9, 2013). Courts consistently uphold warranties like GM's 4-year, 50,000 mile Limited Warranty. *See, e.g., Goldstein,* 2020 WL 1849659 at *13 (GM 4 year/50,000 mile warranty)*; Alban,* 2011 WL 900114, at *9 (4 year/50,000 mile warranty); *Suddreth v. Mercedes-Benz, LLC,* 2011 WL 5240965, at *5 (D.N.J. Oct. 31, 2011) (4 year/50,000 mile warranty).[54]

B.    **GM's Limited Warranty Does Not Cover Design Defects.**

Plaintiffs' express warranty claims fail for the additional reason that the alleged defect is not covered by GM's Limited Warranty, which limits coverage to "any vehicle defect . . . related

---

[54] *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010) (3 year/36,000 mile warranty); *Nelson v. Nissan N. Am., Inc.,* 894 F. Supp. 2d 558, 565–66 (D.N.J. 2012) (5 year/60,000 mile warranty).

to materials or workmanship occurring during the warranty period." CAC ¶ 48; *Sloan*, 2017 WL 3283998, at *8 ("[T]he overwhelming weight of state law authority holds that design defects are *not* covered under" GM's Limited Warranty).

There are two distinct categories of product defects (i) manufacturing defects that cover materials and workmanship, and (ii) design defects that exist in every product possessing the faulty design:

> A manufacturing defect exists when an item is produced in a substandard condition, and [s]uch a defect is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line. A design defect, in contrast, exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective.

*Davidson v. Apple, Inc*., 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017).

Plaintiffs specifically allege that *all* CUE systems in every class vehicle suffer from the same *design* defect. CAC ¶¶ 7 (alleging the "[d]efect is inherent in every CUE System"); 74 ("CUE was defectively *designed*"); 77 ("placement of the screws is a defective *design*") (emphasis added).  Where, as here, a defect is alleged in all vehicles, the claim is for a *design* defect. *See, e.g.*, *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018) (finding "no plausible claim" that the inclusion of the alleged brake defect was the result of a mistake or fabrication flaw); *Hindsman v. Gen. Motors LLC*, 2018 WL 2463113, at *7 (N.D. Cal. June 1, 2018) (plaintiffs failed to "plausibly" plead "a difference from the manufacturer's intended design or a deviation among products."); *Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) (allegations of a defect in all vehicles alleges a design defect).

Because plaintiffs allege a design defect not covered by GM's Limited Warranty, their express warranty claim fails. *Dawson*, 2019 WL 3283046, at *7 n.6 ("[GM's] warranty covers

only 'materials and workmanship,'" not design defects); *Hindsman*, 2018 WL 2463113, at *6 (GM's "Limited Warranties cover defects in materials or workmanship they do not cover design defects."); *Acedo v. DMAX, Ltd.*, 2015 WL 12696176, at *23 (C.D. Cal. Nov. 13, 2015) (GM warranty "clearly limits coverage to 'defects in materials and workmanship'").[55]

## IV.   PLAINTIFFS DO NOT STATE VIABLE CLAIMS FOR BREACH OF IMPLIED WARRANTY.

Plaintiffs' implied warranty claims under UCC § 2-314 as enacted in 10 states should be dismissed for multiple reasons.[56]

### A.   Plaintiffs Plead No Facts Showing Unmerchantability.

Plaintiffs' implied warranty of merchantability claims require factual allegations plausibly establishing that at the time of sale, plaintiffs' vehicles were not "fit for the ordinary purposes for which such goods are used." UCC § 2-314; *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) ("For an automobile, the implied warranty of merchantability is only when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.'").[57]

Plaintiffs admit that "[a]t the time of purchase, [their] vehicle's CUE touchscreen did not exhibit any cracks or spider-webbing, or any other manifestations of the [d]efect."[58] It was only

---

[55] A minority of cases with unreasonable interpretations of GM's warranty hold otherwise.  *See McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 756 (E.D. Mich. 2019); *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1181 (S.D. Fla. 2019).

[56] Counts 5 (FL), 7 (IN), 9 (KS), 11 (MD), 14 (MI), 17 (NJ), 21 (NY), 23 (NC), 25 (TX), 28 (WV).

[57] New Jersey plaintiffs allege breach of the implied warranty of fitness for a particular purpose. CAC ¶ 611. Plaintiffs must allege that (1) the seller had reason to know the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer must actually rely upon the seller's skill or judgment. *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 92 (3d Cir. 1983).

[58] *See, e.g., id.* ¶¶ 121, 136, 149, 161, 188, 200, 213, 225, 249, 286, 297, 310, 324, 336.

after years of use that the touchscreen began to allegedly spider-web or crack and purportedly worsen over time.[59] Alleged defects "where a vehicle's operability was not impaired until a particular part malfunctioned and required replacement" are generally insufficient to demonstrate unmerchantability. *Blissard*, 2018 WL 6177295, at *7 (quotation omitted).

Even when plaintiffs allegedly experienced issues with their CUE system being unresponsive or cracking, they do not allege that it prevented them from using or operating their vehicles. In fact, the majority of plaintiffs never even sought to have their CUE system repaired[60] and all still own and operate their vehicles.[61] Where a vehicle has been driven for several years or thousands of miles, it satisfies its ordinary purpose, and cannot form the basis for a claim of breach of implied warranty. *See id.* at *8; *Suddreth*, 2011 WL 5240965, at *5 ("It is simply not plausible that a motor vehicle could be classified as not merchantable when it has been used for its intended purpose for 4 years and 50,000 miles.").

Plaintiffs conclusorily allege that "the defective CUE Systems pose serious safety risks." CAC ¶ 1. No plaintiff alleges any facts or experience of a safety hazard, accident, or injuries after *years* of use. Speculative allegations that an alleged defect can *theoretically* impact vehicle safety do not render the vehicle unmerchantable. *Blissard*, 2018 WL 6177295, at *8; *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013) (no breach of implied warranty of merchantability where no plaintiff experienced a safety issue and vehicles were driven without incident for 5+ years); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *9

---

[59] *Id.* ¶¶ 150-51, 162-63, 174, 189, 191, 201-02, 214-15, 226-27, 238, 250, 260-61, 268, 278, 287-88, 298-99, 311-12, 325, 337-38. One plaintiff allegedly experienced issues shortly after purchasing a new vehicle and his CUE system was replaced at no cost. *Id.* ¶ 173.

[60] AL, Schellhammer; FL, Braden and Kladke; NJ, Gruchacz; NC, Cauthen and Macaisa; TX, Cox; KS and MD plaintiffs.

[61] *Id.* ¶¶ 121, 136, 149, 161, 173, 196, 200, 213, 225, 236, 256, 264, 271, 276, 286, 297, 310, 332, 336.

(N.D. Cal. Apr. 13, 2017) (alleged defect that "merely exacerbates the normal and expected dangers" of operating a vehicle is not sufficient for unmerchantability).

B.   **Plaintiffs Do Not Allege That The Defect Occurred Within The Term Of The Warranty.**

Plaintiffs' implied warranty claims also fail because they are untimely. Under UCC § 2–316, a seller of goods may exclude or modify the implied warranty of merchantability or any part of it, provided that they do so in writing and in conspicuous language.

Consistent with this provision, courts have held that a manufacturer may limit implied warranties to the duration of their express warranty.[62] The GM Limited Warranty provides that "[a]ny implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty." CAC ¶ 48.  None of the plaintiffs allege their claims fall within the terms of the implied warranty.

The Florida, Michigan, New Jersey, and Texas plaintiffs' claims fail for the same reasons as their express warranty claims. *See* Section III(A). The Maryland plaintiff's claim fails because she does not allege her vehicle was under warranty when she first experienced issues years after purchase, and does not allege she took her vehicle to a dealership for repair.  CAC ¶ 226.  The Indiana and New York plaintiffs allege their CUE systems were replaced under warranty but do not allege they brought their vehicles to be repaired for any alleged subsequent issues.  *Id.* ¶¶ 207, 279-80.

The Kansas, North Carolina, and West Virginia plaintiffs purchased used 2013 and 2014 Cadillac vehicles and the warranty period had long expired by the time they allegedly

---

[62] *See, e.g., Deburro v. Apple, Inc.*, 2013 WL 5917665, at *6 (W.D. Tex. Oct. 31, 2013); *Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *9 (S.D.N.Y. May 19, 2009); *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *7 (D.N.J. Mar. 31, 2008).

experienced issues with their CUE systems in 2019.[63]  They also do not allege that they took their vehicle to a dealership or sought repairs within the warranty period.

        **C.**     **Certain Plaintiffs' Claims Are Time-Barred.**

Certain Florida, Indiana, Michigan, New Jersey, New York, and Texas plaintiffs' UCC implied warranty claims are time-barred.

The four-year limitations period under the UCC applies, and is not tolled by the discovery rule, for the Florida, Indiana, Michigan, New Jersey, and Texas plaintiffs. *See* UCC § 2-725(2); *Popham v. Keystone RV Co.*, 2016 WL 4993393, at *5 (N.D. Ind. Sept. 19, 2016) ("failure to discover a . . defect during" the express warranty period could not extend a UCC claim for breach of implied warranty of merchantability beyond the express warranty period).

Each plaintiff's claim accrued as of the vehicle purchase date. CAC ¶ 3 (alleging all "Class Vehicles were sold with defective CUE Systems"). New York plaintiff Howard purchased her vehicle in 2012, and Florida plaintiff Savage, Indiana plaintiff Bradley, and New Jersey plaintiff Gruchacz purchased vehicles in 2013 – more than six years before they brought their claims. *Id*. ¶¶ 24-25, 31, 33.[64] Michigan plaintiff Tubbs, Florida plaintiff Braden, and Texas plaintiff Cox purchased vehicles in 2014 and did not experience any issues or bring any claims until more than four years later. *Id*. ¶¶ 21, 30, 36.[65]

Their claims are therefore time-barred, and plaintiffs have not pled sufficient facts for equitable tolling. *See* Section I.

---

[63] *Id*. ¶¶ 211, 214, 284, 287, 296, 298, 334, 337.

[64] Indiana plaintiff alleges her CUE system was replaced under warranty but that she had to pay to have it replaced again after the warranty expired. *Id*. ¶ 207.

[65] Florida plaintiff Braden leased his vehicle in 2014 before purchasing it. *Id*. ¶ 21.

D.      **State Law Privity Requirements Bar Certain Plaintiffs' Claims.**

Because all plaintiffs purchased their vehicles from independent dealerships or at auction,[66] they cannot allege privity with GM as required to recover economic damages for breach of implied warranty claims under Florida, New York, and North Carolina law.[67]

Courts consistently find that there is no principal-agent relationship between automobile manufacturers such as GM and its franchised dealers. *Williams v. Yamaha Motor Co.*, 2015 WL 13626022, at *6 (C.D. Cal. Jan. 7, 2015) ("[T]he relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not agents of manufacturers.") (internal citations and quotations omitted); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 310 (N.D.N.Y. 2019) (finding "third-party dealer's relationship with [manufacturer] does not provide a basis for finding privity between plaintiff and [manufacturer]").   Plaintiffs' conclusory allegation that GM "exercises great control" over its dealerships is not sufficient to show an agency relationship between GM and dealers. CAC ¶ 92; *see Lexow & Jenkins, P.C. v. Hertz Com. Leasing Corp.*, 122 A.D.2d 25, 26, (N.Y. App. Div. 1986) (requiring "cognizable proof of an agency relationship"); *Dennis v. Whirlpool Corp.*, 2007 WL 9701826, at *5 (S.D. Fla. Mar. 13, 2007) (requiring "well[-]pleaded facts" to support an agency relationship).

Plaintiffs allege that privity is not required because plaintiffs are "intended third-party beneficiaries of contracts between GM and its dealerships; specifically, they are the intended beneficiaries of GM's implied warranties." CAC ¶ 45. This exception is not recognized under

---

[66] *Id.* ¶¶ 147, 159, 172, 183, 275, 284, 296.

[67] *See Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005); A*racena v. BMW of N. Am., LLC*, 159 A.D.3d 664, 666 (N.Y. App. Div. 2018); *Gregory v. Atrium Door & Window Co.*, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992).

Florida or North Carolina law.[68] Plaintiffs do not allege plausible facts that the exception applies here because they have "not included any factual allegations regarding the contract between Defendant and the authorized dealer, much less any factual allegations plausibly suggesting that the contract was intended to provide a sufficiently immediate benefit to [plaintiff]." *Cummings*, 401 F. Supp. 3d at 313; *Dixon v. Ford Motor Co.*, 2015 WL 6437612, at *5-6 (E.D.N.Y. Sept. 30, 2015) (finding plaintiff failed to plead it was a third-party beneficiary because he failed to cite any contractual provisions between the manufacturer and the seller that would indicate plaintiff was a third-party beneficiary of those contracts).

## V.   PLAINTIFFS' MMWA CLAIM IS NOT COGNIZABLE.

Plaintiffs' Magnusson-Moss Warranty Act claim (Count 1) cannot proceed because the underlying state law express and implied warranty claims are not viable. *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *6 (D.N.J. Sep. 29, 2008) *aff'd*, 374 F. App'x 250 (3d Cir. 2010) (MMWA claims rise or fall with state law warranty claims).

The MMWA claim fails for the additional reason that plaintiffs cannot satisfy the MMWA's express jurisdictional requirements 15 U.S.C. § 2310(d)(3)(C). To maintain a class action under the MMWA, the number of named plaintiffs must be at least 100. *Id.* With only 19 named plaintiffs, this purported class action is not cognizable under the MMWA. *See Goldstein*, 2020 WL 1849659, at *6 (dismissing MMWA claim with less than 100 named plaintiffs); *Smart v. Sony Corp. of Am., Inc.*, 2010 WL 11508565, at *10 (S.D. Cal. Aug. 6, 2010) (same); *Pilgrim v. Gen. Motors Co.*, 408 F. Supp. 3d 1160, 1169 (C.D. Cal. 2019) (same).

---

[68] *See Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1118 (S.D. Fla. 2019) (finding no third-party beneficiary exception to the contractual privity requirement under Florida law); *Lamb v. Cookware Co. (USA), LLC*, 2020 WL 3179682, at *3 (S.D.N.Y. 2020) (discussing cases and declining to apply third-party beneficiary exception under Florida law); *Fowler v. Gen. Elec. Co.*, 252 S.E.2d 862, 864 (N.C. Ct. App. 1979) (exceptions to the privity requirement to warranties under North Carolina law do not apply to motor vehicles).

## VI.   PLAINTIFFS CANNOT STATE UNJUST ENRICHMENT CLAIMS.

### A.   Plaintiffs Lack Standing For A Nationwide Class On Unjust Enrichment.

Plaintiffs' nationwide unjust enrichment claim (Count 39) should be dismissed for the independent reason that there is no named plaintiff from 39 states, and plaintiffs cannot represent putative class members from other states. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."); *see, e.g., Goldstein*, 2020 WL 1849659 at *12 (dismissing nationwide unjust enrichment claim for lack of standing); *Ponzio v. Mercedes-Benz USA, LLC*, 2020 WL 1183733, at *12 (D.N.J. 2020) (same).

### B.   Plaintiffs Do Not Plead Viable State Unjust Enrichment Claims.

Plaintiffs' unjust enrichment claims (Count 30) cannot proceed for several reasons. First, unjust enrichment is not available where there is an express contract.[69] Plaintiffs allege "GM provided all purchasers and lessees of the Class Vehicles with a New Vehicle Limited Warranty[.]" CAC ¶ 47. Unjust enrichment claims are dismissed at the pleadings stage where, as here, there is no dispute an express contract exists or the claims arise out of the same conduct.[70]

---

[69] *See also Jones v. Bank of Am.*, *N.A.*, 2019 WL 2744470, at *8 (N.D. Ala. July 1, 2019); *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *14 (N.D. Cal. June 28, 2017) (Florida law); *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 93 F. Supp. 3d 915, 934 (N.D. Ind. 2015); *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006); *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608-09 (Md. 2000); *Power Process Eng'g Co.v. ValvTechnologies, Inc.*, 2016 WL 7100504, at *4 (E.D. Mich. Dec. 6, 2016); *Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *16 (D.N.J. Mar. 31, 2010); *Scott v. Fields*, 92 A.D.3d 666, 669 (N.Y. App. Div. 2012); *Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co., Inc.*, 594 S.E.2d 425, 429 (N.C. Ct. App. 2004); *Tex. Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998); *Smith v. 21st Century Nat. Fuels, LLC*, 2016 WL 1465431, at *5 (S.D.W. Va. Apr. 14, 2016).

[70] *See, e.g., Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 822 (D. Md. 2015); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471-72 (S.D.N.Y. 2014); *Power Process Eng'g Co.*, 2016 WL 7100504, at *4.

Second, Alabama, Indiana, Maryland, Michigan, New York, and Texas plaintiffs' unjust enrichment claims fail because they have an adequate legal remedy in their fraud, consumer protection, and warranty claims.[71] This bar applies regardless of the legal sufficiency of those claims. *Duffie*, 2016 WL 8259511, at *1.

Third, Maryland, New Jersey, and Texas plaintiffs, and certain Michigan and North Carolina plaintiffs, purchased their vehicles from independent dealerships or at auction,[72] and therefore do not meet the requirement that they have a direct relationship with GM and conferred a benefit directly on GM.[73] To the extent plaintiffs argue that they conferred a direct benefit on GM by purchasing vehicles from an authorized dealership, that is not sufficient. Michigan plaintiff Blanchard does not allege that she purchased her used vehicle at an authorized dealer (CAC ¶ 236); New Jersey plaintiff Tyson purchased his used vehicle from a wholesaler (*id.* ¶ 266); and North Carolina plaintiff Macaisa purchased his vehicle at auction (*id.* ¶ 296). The other plaintiffs do not allege facts establishing under each state's laws that they conferred a direct benefit on GM and GM was unjustly enriched.[74]

[71] *Jones*, 2019 WL 2744470, at *8; *Entm't USA*, 93 F. Supp. 3d at 934; *Duffie v. Mich. Grp., Inc.–Livingston*, 2016 WL 8259511, at *1 (E.D. Mich. Jan. 15, 2016); *J & K Parris Const., Inc. v. Roe Ave., Assocs., Ltd*, 2015 WL 3551627, at *8 (N.Y. Sup. Ct. May 19, 2015); *Tex. Carpenters Health Ben. Fund*, 21 F. Supp. 2d at 678; *State v. Philip Morris Inc.*, 1997 WL 540913, at *15 (Md. Cir. Ct. May 21, 1997).

[72] CAC ¶¶ 223, 236, 257, 266, 275, 296, 308, 320.

[73] *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 552 (D. Md. 2011); *Storey v. Attends Healthcare Prods., Inc.*, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016); *Alin*, 2010 WL 1372308, at *15; *Perales v. Bank of Am., N.A.*, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014).

[74] *See, e.g., Alin*, 2010 WL 1372308, at *15 (dismissing unjust enrichment claim where no allegation of profit sharing); *Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.*, 674 A.2d 534, 540 (Md. 1996) ("a 'third party is not unjustly enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties.'"); *Smith v. Texas*, 2011 WL 2883402, *6 (N.D. Tex. July 15,

Fourth, New Jersey plaintiffs' allegations that GM "fail[ed] to disclose" and made "material misrepresentations regarding known defects" (CAC ¶ 773), are insufficient to state a claim because tortious conduct allegations cannot support an unjust enrichment claim under New Jersey law. *See McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132 at *2-3 (D.N.J. June 6, 2014) (dismissing unjust enrichment claim asserting "[d]efendant concealed certain defects in and misrepresented the qualities and functionality of the navigation system in the vehicle [p]laintiff purchased[]" because such claims sounded in tort).

### C.    Certain Plaintiffs' Claims Are Time-Barred.

Plaintiffs' unjust enrichment claims accrued when they purchased their vehicles. CAC ¶¶ 3, 771-72.[75] Florida plaintiffs Savage and Braden failed to bring claims within 4 years; New York plaintiff failed to bring her claim within 3 years; and Texas plaintiffs Cox and Piazza failed to bring claims within 2 years. Plaintiffs' claims are not saved by the discovery rule or equitable tolling. *See* Sections I and II(B).

### CONCLUSION

For the foregoing reasons, GM respectfully requests that the Court dismiss all of plaintiffs' claims without leave to amend.

---

2011) (requiring a connection between the parties that could be interpreted as one party having an implied or quasi-contractual obligation to repay the other party for benefits conferred).

[75] *See Cleveland Clinic Fla. v. Child. Cancer Caring Ctr., Inc.*, 274 So. 3d 1102, 1105 (Fla. App. 4 Dist. 2019) (Florida unjust enrichment claim accrues "when the last element constituting the cause of action occurs[]"); *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 520 (2d Cir. 2001) (New York unjust enrichment claim accrues "'upon the occurrence of the wrongful act giving rise to a duty of restitution.'"); *Sherer v. Sherer*, 393 S.W.3d 480, 491 (Tex. App. 2013) (TX claim runs from "when the unjust enrichment cause of action accrued.").

Respectfully submitted,

*OF COUNSEL:*

POTTER ANDERSON & CORROON LLP

Kathleen Taylor Sooy
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: 202.624.2500
ksooy@crowell.com

By:  *s/ John  A. Sensing*
    Kathleen Furey McDonough (No. 2395)
    John A. Sensing (No. 5232)
    Clarissa R. Chenoweth-Shook (No. 5728)
    1313 North Market Street, Sixth Floor
    Wilmington, DE  19801
    Telephone: 302.984.6000
    kmcdonough@potteranderson.com
    jsensing@potteranderson.com
    cchenoweth@potteranderson.com

Allyson M. McKinstry
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: 212.223.4000
amckinstry@crowell.com

*Attorneys for General Motors LLC*

Dated: July 22, 2020