## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTAL ROBINSON, *et al.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-663-RGA-SRF |
| | ) |
| GENERAL MOTORS LLC, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this product liability putative class action is a motion to

dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by

defendant, General Motors LLC ("GM"). (D.I. 31) For the following reasons, I recommend that

the court GRANT-IN-PART and DENY-IN-PART GM's motion to dismiss.[1]

### II. BACKGROUND[2]

On May 15, 2020, nineteen plaintiffs, Crystal Robinson ("Robinson"), Richard

Schellhammer ("Schellhammer"), William Braden ("Braden"), Earl Kladke ("Kladke"), Joseph

Palopoli, Jr. ("Palopoli"), Lana Savage ("Savage"), April Bradley ("Bradley"), John Toda

("Toda"), Maxine Glenn ("Glenn"), Nicole Blanchard ("Blanchard"), Gladys Tubbs ("Tubbs"),

---

[1] On June 22, 2020, the parties filed a stipulation, which the court ordered, altering the page limitations and schedule for the briefing related to the present motion. (D.I. 23; D.I. 24) The briefing for GM's motion to dismiss is as follows: GM's opening brief (D.I. 32), Plaintiffs' answering brief (D.I. 34), and GM's reply brief (D.I. 35). On February 10, 2021, Plaintiffs filed a "Notice of Recent Authority" to alert the court to *Goldstein v. Gen. Motors LLC*, 2021 WL 364140 (S.D. Cal. Feb. 3, 2021), which the court considered in making this Recommendation. (D.I. 38)

[2] The facts in this section are based upon allegations in Plaintiffs' complaint, which the court accepts as true for the purposes of the pending motion to dismiss. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

Tonya Gruchacz ("Gruchacz"), Robert Tyson ("Tyson"), Katrina Howard ("Howard"), Sheila
Cauthen ("Cauthen"), Mariano Lorenzo Macaisa ("Macaisa"), Gini Michelle Cox ("Cox"),
Kendra Piazza ("Piazza"), and David Conroe ("Conroe") (collectively, but excluding Braden,[3]
"Plaintiffs"), filed a putative class action complaint against GM.[4] (D.I. 1) Plaintiffs are citizens
of Alabama, Florida, Indiana, Kansas, Maryland, Michigan, New Jersey, New York, North
Carolina, Texas, and West Virginia who purchased new, used, or certified pre-owned model year
2013 through 2017 Cadillac ATS, SRX, or XTS vehicles. (*Id.* at ¶¶ 19–38)

In 2011, GM began advertising the "Cadillac User Experience" (the "CUE"), a
proprietary "infotainment"[5] system. (*Id.* at ¶¶ 49–51) The CUE was installed on Cadillac ATS,
SRX, and XTS models from 2013 to 2017 and Cadillac ELR and Escalade models from 2014 to
2017 (collectively, the "Class Vehicles"). (*Id.* at ¶¶ 1, 62) The CUE controls the vehicle's
climate, navigation system, audio (radio, CD player, etc.), and backup camera. (*Id.* at ¶¶ 52–61)
Users can also pair their cellular phones to the CUE through Bluetooth and use the CUE's voice
recognition[6] function to initiate and answer calls without using their hands. (*Id.* at ¶¶ 56, 58)
Except for the backup camera, most of the systems controlled by the CUE require use of the
CUE's touch screen interface, which "is built into the top of the vehicle's central instrument
panel." (*Id.* at ¶¶ 52, 62) However, the backup camera does not require a user to touch an icon

---

[3] Branden filed a notice of voluntary dismissal on October 15, 2020, which the court granted.
(D.I. 36, D.I. 37)

[4] The court refers to Plaintiffs' putative class action complaint, (D.I. 1), as the "CAC."

[5] "'Infotainment' is an automobile industry term that refers to vehicle systems that combine
entertainment and information delivery to drivers. Infotainment systems use audio/video
interfaces, touchscreens, keypads, and other types of devices to provide those services." (D.I. 1
at ¶ 50)

[6] To use the CUE's voice recognition, a user presses "the 'Voice Recognition' icon on the
touchscreen display," which "enables the vehicle's voice recognition system, permitting 'hands-
free' operation within the navigation, audio, phone, and weather applications." (D.I. 1 at ¶ 56)

2

on the touch screen. (*Id.* at ¶ 62) "[W]henever the vehicle is placed in Reverse" the CUE's touch screen "converts into a video-type panel" and shows "the area behind the vehicle." (*Id.*)

The CUE's touch screen is comprised of two major components: (1) a "projected capacitance touch screen," which is a "glass sheet with electrode patterns on both sides," and (2) "a plastic cover with channels" that "sits in front of the projected capacitance touch screen and is the physical screen a user touches." (*Id.* at ¶¶ 67–69) Between these two components is a "silicone-like material." (*Id.* at ¶ 70) Plaintiffs allege that the CUE is defective because "the plastic cover is prone to delaminating or separating from the touch screen glass" as a result of the mechanical or thermal stress "commonly experienced during normal operation of a vehicle." (*Id.* at ¶¶ 71–72) When this delamination occurs, "the silicone-like material coalesces and forms a spider-web-like pattern on the display," preventing "a user's touch from being registered."[7] (*Id.*)

Plaintiffs allege that design of the CUE system is defective in various ways: First, the configuration of the screws fastening the plastic cover to the touch screen—six placed at the top of the screen and two at the bottom—causes the bottom portion of the plastic cover to "flex and move when pressure is applied" and "allows too much movement to occur," which eventually leads to spider-webbing and failure. (*Id.* at ¶¶ 73–77) Second, the cut of the rubber gasket on the plastic cover "allows for a gap between the touch screen and the plastic cover." (*Id.* at ¶ 77) The gap "prevents a user's inputs from being registered by the touch screen" and "allows for more flexibility in the plastic cover, which leads to the spider-webbing defect." (*Id.*) Third, and last, the plastic cover delaminates or separates as a result of temperature fluctuations because the

---

[7] To be consistent with the allegations in the CAC, the court refers to this spider-webbing effect and inoperable touch screen as "the Defect" throughout this Report and Recommendation.

materials comprising the touch screen assembly have different "thermal expansion coefficients."

(*Id.* at ¶¶ 78–83)

Plaintiffs claim that the Defect creates a safety risk and causes an unsafe driving distraction. (*Id.* at ¶¶ 84–89) Specifically, Plaintiffs assert when drivers try to use the CUE they are unable to read or see it clearly, become frustrated with and focused on the malfunctioning display, and are required to remove their hands from the wheel more often for longer periods. (*Id.* at ¶¶ 88–89) Plaintiffs also assert that the Defect "distorts or masks the backup camera's images, rendering the camera unusable." (*Id.* at ¶¶ 86–87) Plaintiffs note that backup cameras are a required safety feature in all cars. (*Id.* at ¶ 87)

Plaintiffs allege that "GM knew, or should have known, about the Defect" before it sold the Class Vehicles through various sources, including the following:

pre-release testing data; early consumer complaints about the Defect to GM's dealers who are their agents for vehicle repairs; warranty claim data related to the Defect; aggregate data from GM's dealers; consumer complaints to the NHTSA and resulting notice from NHTSA; dealership repair orders; testing conducted in response to owner or lessee complaints; GM service bulletins applicable to the Class Vehicles; and other internal sources of aggregate information about the problem.

(*Id.* at ¶ 90) Plaintiffs cite four "Technical Service Bulletins" ("TSBs") that GM issued to its dealers, but not its customers, which acknowledge the existence of the Defect as early as December of 2014 as follows: "[s]ome customers may report that their radio screen appears bubbled, cracked, or is delaminating." (*Id.* at ¶¶ 97–98) That same TSB directed technicians to "replace the . . . Integrated Center Stack" when confronted with the Defect and "included a 'Warranty Information' section with a specific Labor Operation code for technicians to use" when performing such work. (*Id.* at ¶ 98) Plaintiffs also cite customer complaints filed with the National Highway Traffic Safety Administration ("NHTSA"), with whom "GM maintains an

4

open dialogue," as further evidence that GM had knowledge of the Defect. (*Id.* at ¶¶ 105–08) Plaintiffs also cite specific posts on Internet forums by customers who complained about experiencing the Defect, to which GM customer care representatives responded. (*Id.* at ¶¶ 109–11) Lastly, Plaintiffs allege that GM was aware of the Defect "based on the large number of repairs performed to the CUE System's exhibiting delamination and spider-webbing at its network of dealerships." (*Id.* at ¶ 115)

This case was filed following the dismissal of the non-California plaintiffs in *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000 (S.D. Cal. 2020) due to lack of personal jurisdiction. Plaintiffs allege thirty causes of action arising from six types of claims: breach of warranty under the Magnuson-Moss Warranty Act ("MMWA"), breach of express and implied warranties under various state laws, violations of various state consumer protection laws, fraudulent concealment, and unjust enrichment. (*Id.* at ¶¶ 362–775) Plaintiffs bring this action on behalf of themselves and all others similarly situated as members of the "proposed Classes" under Federal Rule of Civil Procedure 23. (*Id.* at ¶ 347) The "proposed Classes" include: the Nationwide Class (also referred to as the "Class"), the Alabama Sub-Class, the Florida Sub-Class, the Indiana Sub-Class, the Kansas Sub-Class, the Maryland Sub-Class, the Michigan Sub-Class, the New Jersey Sub-Class, the New Jersey TCCWNA Sub-Class,[8] the New York Sub-Class, the North Carolina Sub-Class, the Texas Sub-Class, the Texas DTPA Sub-Class,[9] and the West Virginia Sub-Class. (*Id.*

---

[8] "All members of the New Jersey Sub-Class who are 'consumers' as defined in the New Jersey Truth-in-Consumer, Contract, Warranty and Notice Act." (D.I. 1 at ¶ 348)

[9] "All members of the Texas Sub-Class who are 'consumers' as defined in the Texas Deceptive Trade Practices Act ('DTPA')." (D.I. 1 at ¶ 348)

at ¶ 348) In each state sub-class, Plaintiffs seek to represent "[a]ll persons and entities who purchased or leased a Class Vehicle" in that state.[10] (*Id.*)

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all well pleaded factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Umland v. Planco Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); s*ee also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."

---

[10] *See* Appendix A, attached separately to this Report and Recommendation, which includes a chart of Plaintiffs' claims, the putative classes, and the court's recommendations for each asserted count in the CAC.

6

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

### a. Common Law Fraudulent Concealment and Plaintiffs' State Consumer Protection Claims

Count XXIX of the CAC contains fraudulent concealment claims under the common law of eleven different states.[11] (D.I. 1 at ¶¶ 759–68) The elements of a fraudulent concealment claim are similar in each state. *See Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*, 244 So. 3d 896, 930 (Ala. 2017); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017); *Armstrong v. Deere & Co.*, 2017 WL 4168485, at *7 (S.D. Ind. Sept. 20, 2017); *Kestrel Holdings I, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1078 (D. Kan. 2004); *Crystal v. Midatlantic Cardiovascular Associates, P.A.*, 133 A.3d 1198, 1209 (Md. Ct. Spec. App. 2016); *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013) (Michigan law); *Polhill v. FedEx Ground Package Sys.*, 604 F. App'x 104, 107 n.2 (3d Cir. 2015) (New Jersey law); *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013); *Friedland v. Gales*, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998); *Lilly v. Tex. Dep't of Criminal Justice*, 472 S.W.3d 411, 420 (Tex. App. 2015); *Roney v. Gencorp*, 431 F. Supp. 2d 622, 637 (S.D.W. Va. 2006). In general, to successfully plead fraudulent concealment, a plaintiff must allege that the defendant had "(1) a legal duty to disclose (2) a material fact (3) that plaintiff could not discover without defendant disclosing it; (4) that defendant intentionally failed to disclose that fact; and

---

[11] These states are Alabama, Florida, Indiana, Kansas, Maryland, Michigan, New Jersey, New York, North Carolina, Texas, and West Virginia. (D.I. 1)

(5) that plaintiff was harmed by relying on the non-disclosure." *Polhill*, 604 F. App'x 104, 107 n.2 (3d Cir. 2015) (citing *Rosenblit v. Zimmerman*, 766 A.2d 749, 757–58 (N.J. 2001) (stating elements of fraudulent concealment under New Jersey law).

GM argues that the court should dismiss Plaintiffs' fraudulent concealment claims because the allegations in the CAC fail to: (1) satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b); (2) plausibly allege GM's knowledge of the alleged defect at the time Plaintiffs' vehicles were sold; and (3) allege that GM had a duty to disclose.[12] (D.I. 32 at 1, 8–17) GM also argues that the economic loss doctrine bars Plaintiffs' fraudulent concealment claims brought under Florida, Maryland, Michigan, New Jersey, New York, and Texas law and Plaintiffs' claims under the North Carolina Unfair and Deceptive Trade Practices Act. (*Id.* at 1, 17–18, 23; D.I. 35 at 8)

Plaintiffs also allege thirteen claims under the consumer protection statutes of the same eleven states: Count II (Alabama), Count III (Florida), Count VI (Indiana), Count VIII (Kansas), Count X (Maryland), Count XII (Michigan), Count XV (New Jersey), Count XVI (New Jersey), Count XIX (New York), Count XX (New York), Count XXII (North Carolina), Count XXVI (Texas), and Count XXVII (West Virginia). (D.I. 1 at ¶¶ 380–404, 405–13, 452–73, 481–500,

---

[12] Knowledge of the defect and a duty to disclose are elements required to plead claims under California's Consumers Legal Remedies Act ("CLRA"). *Goldstein v. Gen. Motors LLC*, 2021 WL 364140, at *5–6 (S.D. Cal. Feb. 3, 2021). The parties brief these elements as being required for Plaintiffs' fraudulent concealment and state consumer protection claims without clearly citing the elements to the respective states' jurisprudence applicable here. The parties cite heavily to California authorities despite the fact that there are no claims at issue under California law. (*See* D.I. 32 at 11–18; D.I. 34 at 7–15) GM admits that knowledge of the defect is a required element for fraudulent concealment under all of the state laws applicable to Plaintiffs' claims. (D.I. 32 at 11) In addition, Plaintiffs admit that "Alabama, Florida, Kansas, New York, North Carolina, and West Virginia all recognize a duty to disclose where one party has superior knowledge of a material fact or such knowledge could not be discovered through reasonable diligence." (D.I. 34 at 14) The court addresses these elements as being universal requirements for Plaintiffs' fraudulent concealment and consumer protection claims in light of the parties' admissions.

8

510–521, 532–50, 589–604, 633–49, 664–74, 720–51) GM argues that Plaintiffs' state law consumer protection claims fail for the same reasons as their fraudulent concealment claims. (D.I. 32 at 18–20; D.I. 35 at 35 at 6) GM also argues that certain of Plaintiffs' state consumer protection claims are time-barred and that others fails for state-specific grounds. (D.I. 32 at 20–23; D.I. 35 at 6–8) The court addresses Plaintiffs' fraudulent concealment and various state consumer protection claims together because of Plaintiffs' similar allegations and GM's overlapping arguments regarding such claims. (*Compare* D.I. 1 at ¶¶ 386–401, *with id.* at ¶¶ 761–68; D.I. 32 at 18–20; D.I. 35 at 35 at 6)

### i. Rule 9(b)

Plaintiffs' fraudulent concealment and state consumer protection claims must be pleaded with particularity and satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).[13] *See* Fed. R. Civ. P. 9(b); *Hicks v. Boeing Co.*, C.A. No. 13-393-SLR-SRF, 2014 WL 1284904, at *6–7 (D. Del. Mar. 21, 2014) (applying Rule 9(b) pleading standard to a fraudulent concealment claim alleged under Mississippi law); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 568–73 (D.N.J. 2012) (applying Rule 9(b) to various state consumer protection claims arising from alleged "omission-based fraud"). In general, to successfully plead fraud, the plaintiff must allege "the who, what, when, where and how of the events at issue." *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (internal quotations and citations omitted). However, courts have "relaxed" Rule 9(b)'s requirements "when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989); *see also Juju, Inc. v. Native Media, LLC*, C.A. No. 19-402-CFC-

---

[13] The parties do not dispute that Rule 9(b) applies to Plaintiffs' fraudulent concealment and state consumer protection claims. (D.I. 32 at 8–10, 18–20; D.I. 34 at 4–7, 18–20)

CJB, 2020 WL 3208800, at \*8 (D. Del. June 15, 2020), *report and recommendation adopted*, 2020 WL 4001059 (D. Del. July 15, 2020). In such instances, a fraud claim will survive a motion to dismiss if the complaint contains allegations "that the necessary information lies within [the] defendants' control" supported by a "statement of facts upon which the allegations are based." *See Craftmatic*, 890 F.2d at 645. Similarly, where a plaintiff alleges "fraud-by-omission . . . the Rule 9(b) standard is relaxed . . . because a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, 2018 WL 4144683, at \*10 (D.N.J. Aug. 29, 2018) (internal alterations and quotation marks omitted) (citing *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 385 (D.N.J. 2014); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)). Nevertheless, omission-based fraud claims must satisfy Rule 9(b) by pleading "'the who, what, when, where, and how' of the alleged omission." *Wozniak v. Ford Motor Co.*, 2019 WL 108845, at \*3 (E.D. Mich. Jan. 4, 2019) (quoting *Miller v. Gen. Motors, LLC*, 2018 WL 2740240, at \*11 (E.D. Mich. June 7, 2018)). More specifically, a plaintiff must allege "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Miller*, 2018 WL 2740240, at \*11 (citing *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)).

GM argues that the CAC fails to identify "any alleged misrepresentation" with the particularity that Rule 9(b) requires. (D.I. 32 at 8–10) GM's argument mischaracterizes Plaintiffs' fraud claim. Plaintiffs' fraud and state consumer protection claims are based on GM's alleged omission of material facts, not affirmative misrepresentations. (*See* D.I. 1 at ¶¶ ¶¶ 380–

10

404, 405–13, 452–73, 481–500, 510–521, 532–50, 589–604, 633–49, 664–74, 720–51, 759–68)

Accordingly, the CAC need not contain allegations of an affirmative misrepresentation to

survive a motion to dismiss. *See Polhill*, 604 F. App'x 107 n.2 (stating elements of fraudulent

concealment, none of which are a misrepresentation by the defendant).

The CAC contains specific allegations of what GM omitted: the Defect. (D.I. 1 at ¶¶ 1–

3, 66–83) The CAC describes various channels through which GM could have disclosed the

Defect but did not, for example, press releases, Monroney stickers, dealership brochures, and

dealership salespeople. (*Id.* at ¶¶ 91–94) The CAC describes the contents of the omission at

issue by describing how the CUE is defective and the way it manifests itself to the vehicle

owner. (*Id.* at ¶¶ 66–83) The CAC explains how GM's failure to disclose the Defect was

misleading because GM advertised the CUE as a driver safety feature notwithstanding that the

Defect caused distracted driving and backup camera failure.[14] (*Id.* at ¶¶ 63–65, 84–89) Based on

these specific factual allegations, Plaintiffs have accomplished the purpose of the heightened

pleading set forth in Rule 9(b), which is to require plaintiffs to "state the circumstances of the

alleged fraud with sufficient particularity to place the defendant on notice of the precise

misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.

2007); *see also Nelson*, 894 F. Supp. 2d at 568; *Wozniak*, 2019 WL 108845, at \*3 (noting that a

plaintiff alleging fraud and state consumer protection claims may satisfy Rule 9(b) "if it alleges

that a manufacturer knew of a defect before sale, the various venues the manufacturer used to

sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the

_____

[14] The CAC also contains allegations that GM knew about the Defect before Plaintiffs purchased
their Class Vehicles and that GM's failure to disclose the Defect was material. The CAC also
includes allegations of reliance, causation, and damages. The court addresses each of these
elements and the parties' respective arguments about them in section IV.a.ii–iv, *infra*.

product or would have paid less for it had they known of the defect") (citing *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751–52 (E.D. Mich. 2017)). The court recommends finding that the specificity requirements of Rule 9(b) have been met as to Plaintiffs' fraudulent concealment and state consumer law-based claims.

## ii. GM's Knowledge of the Defect

GM makes several arguments concerning Plaintiffs' failure to allege that it had "exclusive knowledge" of the Defect "at the time of sale." (D.I. 32 at 11–15) Plaintiffs assert that their allegation of GM's pre-sale knowledge of the Defect is supported by: (1) GM's TSBs, the first of which was issued in December 2014, (2) GM's communications with customers about the Defect, which began as early as May 2014, and (3) GM's testing and data. (D.I. 34 at 7–14)

GM argues that the TSBs cannot support pre-sale knowledge of the Defect because they do not mention the "safety hazards" created by the Defect. (D.I. 32 at 12–13) However the California cases GM's cites in support of its argument on this point are distinguishable. *See Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *7 (N.D. Cal. Feb. 15, 2019) (concluding that the defendant did not have pre-sale knowledge of the relevant defect based on a TSB discussing "[c]lacking or knocking noises directly after a load change" that was issued before plaintiff's vehicle purchase where the defect plaintiff alleged related to the vehicle "bucking and jerking" not a "noise defect"); *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (concluding that the defendant did not have pre-sale knowledge of the relevant defect based on a TSB that "stated oil loss could be caused by two conditions, neither of which were" the allegedly defective part). Unlike *Mandani* and *Sloan*, the language of the TSBs cited in the CAC ("radio screen appears bubbled, cracked, or is delaminating") closely matches Plaintiffs' description of the Defect (the CUE "delaminate[s], bubble[s] or crack[s] in a 'spider-

12

web' formation"). (*Compare* D.I. 1 at ¶ 3, *with id.* at ¶ 98). Therefore, it is plausibly alleged that GM had knowledge of the Defect "at the time of, and prior to," the December 2014 TSB. *See Gregorio v. Ford Motor Co.*, 2021 WL 778913, at \*9 (E.D. Mich. Mar. 1, 2021) ("[W]hen Ford issues a service bulletin about the precise issue in the precise vehicle that a plaintiff complains of, it is common sense to infer that Ford had knowledge of that issue at the time of, and prior to, the service bulletin."); *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at \*17–18 (D.N.J. Oct. 9, 2013) (finding that a TSB issued before the plaintiffs purchased class vehicles supported "allegations concerning the existence of the Defect" and "that [the defendant] engaged in internal testing and otherwise maintained internal sources of aggregate information about the problem"); *see also Hall v. Gen. Motors, LLC*, 2020 WL 1285636, at \*6–7 (E.D. Mich. Mar. 18, 2020) (comparing the language of TSBs and the alleged defects from several cases and noting that in cases where TSBs "were unmistakably linked to a core feature of the defect at issue," those TSBs support a plausible inference of the manufacturer's knowledge).

GM also argues that the TSBs fail to establish pre-sale knowledge with respect to some Plaintiffs who purchased a Class Vehicle before the December 2014 TSB was issued. (D.I. 32 at 13) However, TSBs issued post-sale can support an inference of the seller's pre-sale knowledge of a defect. *See, e.g.*, *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1058 (C.D. Cal. 2020) ("Because a manufacturer must receive complaints or data raising an issue and then must investigate the issue before issuing a TT or TSB, it is reasonable to infer that manufacturers know of the issue prior to the release of the TT or TSB. The Court finds a five-month period between knowledge of the Defect and release of the TT to be plausible at this stage."); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1094 (N.D. Cal. 2014) ("TSBs issued after Plaintiffs' purchases also plausibly give rise to the inference that Ford knew of the issue prior to

13

their issuance. Of course, a TSB issued long after purchase lends little support to the necessary inference of knowledge, but these TSBS were issued only five and nine months after the last relevant purchase in this case, and less than two years after the first purchase.").

GM also argues that Plaintiffs allegations about consumer complaints to NHTSA and others made on third-party websites are conclusory and fail to establish GM's knowledge of the Defect. (D.I. 32 at 13–15) GM asserts that Plaintiffs fail to allege that a complaint about the Defect was made directly to GM. (*Id.* at 13) However, as Plaintiffs note, the CAC contains several allegations showing that, as early as May 2014, GM's customer care representatives responded directly to customer complaints about the Defect. (*See* D.I. 1 at ¶¶ 109–10) With respect to complaints logged with NHTSA, GM "maintains an open dialogue with the National Highway Traffic Safety Administration (NHTSA), including monthly meetings with senior agency officials, with expedited discussions as needed, covering field investigations, safety recalls and other issues." (*Id.* at ¶ 106) In addition, "automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety related defects." (*Id.* at ¶ 107)

GM also argues, as it did with respect to the TSBs, that the online customer complaints cited in the CAC fail to reference the Defect. (D.I. 32 at 13–14) However, as was the case with the TSBs, several of the complaints cited in the CAC describe the Defect almost verbatim. (*See, e.g.*, D.I. 1 at ¶ 113(a)) ("My CUE started acting erratically and was unresponsive to touch though it jumped all by itself. I went to the dealer who informed me there was a heat crack on the screen (which I did not see due to the glare) and that's what caused the issue.").[15]

---

[15] This consumer complaint is dated December 7, 2016. (D.I. 1 at ¶ 113(a))

GM further argues that Plaintiffs have identified only a "handful" of complaints before

Plaintiffs purchased their Class Vehicles, not enough to establish GM's pre-sale knowledge of

the Defect. (D.I. 32 at 13–15)  GM does not cite any case stating a bright line rule requiring a

particular number of consumer complaints to plausibly allege pre-sale knowledge of a defect.

(*Id.*)  GM cites several distinguishable cases in support of its position. *See, e.g.*, *Williams v.*

*Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1026–28, 1027 n.8 (9th Cir. 2017) (noting that

"*Wilson*[16] did not hold that consumer complaints may never support an allegation of presale

knowledge" and holding that the plaintiff had plausibly alleged pre-sale knowledge based on the

fact that the defendant had established a "a private internal complaint system, and describe[d] the

manner in which it functions and the individual supervisor responsible for its management");

*Baba v. Hewlett–Packard Co.*, 2011 WL 317650, at \*3 (N.D. Cal. Jan. 28, 2011) (concluding

that the complaint lacked allegations of the defendant's pre-sale knowledge of the defect at issue

based on "only three complaints" that were "posted on [the defendant's] website prior to [the

plaintiff's] transaction" because "[a]wareness of a few customer complaints . . . does not

establish knowledge of an alleged defect.").  In addition, one court has held that allegations about

eight consumer complaints posted on the NHTSA website, three of which pre-dated the

plaintiff's purchase, another twelve consumer complaints posted on third-party websites, and

"other internal sources of aggregate information about the Defect" were sufficient to allege pre-

sale knowledge at the pleading stage. *See Borkman v. BMW of N. Am., LLC*, 2017 WL 4082420,

at \*5 (C.D. Cal. Aug. 28, 2017) (collecting cases in support of the court's conclusion).

GM's last argument with respect to pre-sale knowledge is that allegations in the CAC

about GM's pre- and post-sale testing, repair, and warranty data are conclusory.  (D.I. 32 at 11–

---

[16] *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)

12, 15–16) GM argues that Plaintiffs' allegations about such data and GM's creation of a customer care program are speculative. (*Id.* at 15) In support of its position, GM cites distinguishable cases. *See Greene v. BMW of N. Am.*, 2012 WL 5986461, \*7 (D.N.J. Nov. 28, 2012) (concluding that the plaintiff failed to plausibly plead knowledge based on "unnamed individuals at BMW dealerships t[elling] [the plaintiff] that bubbling was 'dangerous' and a 'normal occurrence,'" and the fact that "a single user of the website Tiretrack.com described bubbling in an online posting," while noting that the plaintiff's allegation that the defendant's "knowledge of the defects [was] supported by the prerequisite testing that they performed, or should have performed" was "without any support").

GM's various arguments fail to address the plausible factual allegations in the CAC in totality. (*See* D.I. 32 at 11–15) Instead, GM views averments of GM's pre-sale knowledge in isolation and argues that such information, alone, is insufficient to support GM's knowledge of the Defect dating back to 2012.[17] (*See id.*; *see also* D.I. 1 at ¶ 33) GM's approach is inappropriate at the pleading stage because "on a Rule 12(b)(6) motion, courts must consider the complaint in its entirety and determine whether the complaint as a whole contains sufficient factual matter to state a facially plausible claim." *Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017) (internal citations and quotation marks omitted).

Plaintiffs do not argue that any individual allegation in the CAC plausibly alleges GM's knowledge of the Defect dating back to 2012.[18] (*See* D.I. 34 at 7–14) Plaintiffs argue, and the

---

[17] Howard purchased a Class Vehicle in November 2012, the earliest of any named plaintiff to do so in this case. (D.I. 1 at ¶ 33)

[18] Plaintiffs argue that Rule 9(b) does not apply to their allegations of GM's knowledge of the Defect because "this is an omissions case." (D.I. 34 at 7) Plaintiffs argument lacks merit. *See Johnson v. Ace Cash Express Inc.*, C.A No. 13-1186-LPS, 2015 WL 4397482, at \*2–4 (D. Del. July 17, 2015) (applying Rule 9(b) to a fraud claim based on the Delaware Consumer Fraud Act, and dismissing the claim because the plaintiff had not "alleged with particularity a material

court agrees, that the CAC contains facially plausible allegations that GM knew of the Defect before the first named plaintiff purchased a Class Vehicle based on GM's TSBs, consumer complaints and GM's responses thereto, and GM's aggregated internal data, "[t]aken in . . . totality." (*Id.* at 13)

On January 9, 2012, GM issued a press release touting the research and development work of the team that designed the CUE. (D.I. 1 at ¶ 95) In a subsequent press release, GM noted that it began developing the CUE in 2008. (*Id.* at ¶ 96) On May 9, 2012, GM issued another press release announcing that it was launching a "special customer care program with dedicated support staff trained with expertise on CUE Systems . . . to enable dealers and customers to provide feedback, ask questions and access support in a number of ways." (*Id.* at ¶ 116) On May 14, 2014, a consumer posted a complaint about the Defect on a forum website. (*Id.* at ¶ 110(a)) A GM customer care representative responded to the complaint that same day. (*Id.* at ¶ 110(b)) In total, the CAC contains sixteen consumer complaints made on various websites and eleven responses to such complaints by GM customer care representatives. (*Id.* at ¶¶ 110–114) The CAC also references twelve consumer complaints to NHTSA from May 13, 2016 to October 1, 2018.[19] (*Id.* at ¶ 108(a)–(m)) In December 2014, GM issued the first of "at least four" TSBs stating that "[s]ome customers may report that their radio screen appears bubbled, cracked, or is delaminating." (*Id.* at ¶¶ 97–98) Last, Plaintiffs allege that "GM was also made aware of the Defect based on the large number of repairs performed to the CUE

_____

omission"). Nevertheless, for the reasons described in this section, the court finds that Plaintiffs' allegations satisfy Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 568–69 (D.N.J. 2012) (finding that the plaintiffs fraud claims based on a car manufacturer's failure to disclose defects to consumers had satisfied Rule 9(b)).
[19] As GM notes, there is a duplicate complaint among the list of NHTSA complaints cited in the CAC. (*See* D.I. 1 at ¶ 108(c),(e))

17

System's exhibiting delamination and spider-webbing at its network of dealerships." (*Id.* at ¶ 115) All of these allegations, considered together and viewed in the light most favorable to Plaintiffs, plausibly aver that GM had pre-sale knowledge of the Defect dating to November 2012, the earliest a named plaintiff purchased a Class Vehicle. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

### iii. GM's Duty to Disclose

Next, GM argues that Plaintiffs fail to allege facts establishing that GM had a duty to disclose the Defect. (D.I. 32 at 16–17) In response, Plaintiffs argue that the CAC contains plausible allegations regarding GM's duty to disclose the Defect in accordance with applicable state law. (D.I. 34 at 14–17)

For the relevant jurisdictions, a duty to disclose arises where (1) a defendant has superior knowledge of an alleged defect,[20] (2) the defendant makes a partial or incomplete disclosure

---

[20] Alabama, Florida, Kansas, New York, North Carolina, and West Virginia. *See State Farm Fire & Cas. Co. v. Owen*, 729 So.2d 834, 842–43 (Ala. 1998); *Hooper v. Barnett Bank of W. Fla.*, 474 So. 2d 1253, 1257 (Fla. Dist. Ct. App. 1985), *approved*, 498 So. 2d 923 (Fla. 1986); *Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1195 (D. Kan. 2005); *Catalano v. BMW of N. Am., Inc.*, 2016 WL 3406125, at *4 (S.D.N.Y. 2016) ("Catalano II"); *Bear Hollow LLC v. Morberk, L.L.C.*, 2006 WL 1642126, at *6 (W.D.N.C. June 5, 2006); *Michael v. Estate of Kovarbasich*, 2015 WL 5725814, at *12 (N.D. W.Va. Sept. 29, 2015), *report and recommendation adopted in part sub nom. Michael v. Consolidation Coal Co.*, 2017 WL 1197828 (N.D.W. Va. Mar. 31, 2017), *aff'd*, 773 F. App'x 767 (4th Cir. 2019) (citing *Stemple v. Dobson*, 184 W. Va. 317, 322 (1990)).

about its product,[21] (3) the defendant actively conceals the defect,[22] or (4) a buyer would not be able to discover the defect despite exercising reasonable diligence.[23]

For the reasons already discussed in section IV.a.ii, *supra*, the CAC contains plausible allegations that GM had superior knowledge of the Defect. The CAC also contains allegations of partial disclosures by GM. (D.I. 1 at ¶¶ 63–65) For example, GM advertised that the CUE system improved driver safety by allowing users to access the functions of cell phones and navigation systems manually or verbally through the CUE's voice recognition technology. (*Id.*) GM's advertisement suggested that the CUE improved safety by enabling drivers to interact with various systems while "keeping [their] hands on the wheel and [their] eyes on the road." (*Id.* at ¶ 63) The representations in GM's advertisements were incomplete because they lacked any reference to the Defect, which, as several Plaintiffs specifically allege, caused them to divert their attention from the road while driving. (*Id.* at ¶¶ 130, 142, 154)

The CAC also contains allegations that GM replaced the CUE systems installed on several of the named Plaintiffs' vehicles with equally defective CUE systems. (*See, e.g.*, D.I. 1 at ¶¶ 123–25; 173–74) Replacement of a defective part with an equally defective part "might

---

[21] Kansas, Maryland, Michigan, New Jersey, New York, and Texas. *See Gonzales v. Assocs. Fin. Serv. Co. of Kansas*, 967 P.2d 312, 332 (Kan. 1998); *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005); *Rivera v. Ford Motor Co.*, 2017 WL 3485815, at *8 (E.D. Mich. Aug. 15, 2017); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993); *In re Trico Marine Servs., Inc.*, 374 B.R. 529, 538 (Bankr. S.D.N.Y. 2007), *aff'd sub nom. In re Trico Marine Servs.*, 382 B.R. 201 (S.D.N.Y. 2008), *aff'd sub nom. In re Trico Marine Servs., Inc.*, 340 F. App'x 55 (2d Cir. 2009); *Highland Crusader Offshore Partners, L.P. v. Lifecare Holdings, Inc.*, 2009 WL 1065212, at *6 (N.D. Tex. Apr. 21, 2009), *aff'd sub nom. Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*, 377 F. App'x 422 (5th Cir. 2010).

[22] Indiana. *See Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1262 (Ind. 2014).

[23] *See supra* note 20.

very well constitute active concealment of a systematic problem." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007).

Lastly, the CAC contains specific allegations showing that Plaintiffs could not discover the Defect despite exercising reasonable diligence. Plaintiffs allege that "Defect is undetectable until it manifests" and that it manifests "spontaneously." (D.I. 1 at ¶¶ 3, 357) Plaintiffs explain in detail that thermal and mechanical stresses cause the Defect to manifest. (*Id.* at ¶¶ 66–83) However, Plaintiffs also assert that they understood the nature of the defect only after engaging an expert "who undertook a months-long investigation to understand the Defect." (*Id.* at ¶ 66) After "substantial testing and analyses of different defective CUE units, the expert was able to replicate and determine the Defect." (*Id.*)

GM also argues that New York and New Jersey law "precludes" finding that a manufacturer had a duty to disclose a defect where the manufacturer was not a direct party to the sale of the allegedly defective car at issue to the ultimate consumer. (D.I. 32 at 17; D.I. 35 at 4 n.6) However, the cases GM cites do not "preclude" imposing a duty to disclose on GM. *See Schechter v. Hyundai Motor Am.*, 2020 WL 1528038, at \*15–17 (D.N.J. Mar. 31, 2020); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at \*20 (D.N.J. May 8, 2017) ("New Jersey law imposes a duty to disclose when a defendant has made a partial disclosure."); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 236 (S.D.N.Y. 2015) (noting that under New York law "a seller in an arm's-length transaction has a duty to disclose essential facts if they have superior knowledge of those facts and the buyer could not discover them through ordinary diligence"). For the reasons explained above, Plaintiffs have sufficiently pled GM's duty to disclose the Defect.

20

### iv. Reliance, Causation, and Damages[24]

GM argues that the court should dismiss Plaintiffs' state consumer protection claims because the "conclusory allegations" of reliance and/or causation in the CAC fail to satisfy the specificity required by Rule 9(b). (D.I. 32 at 18–20) GM asserts that Plaintiffs' Alabama, Indiana, Kansas, Maryland, Michigan, Texas, and one of Plaintiffs' New York[25] claims require pleading the elements of reliance and causation. (*See id.* at 19 n.43) Plaintiff agrees that reliance and causation are required elements of these claims except for their Alabama claim pursuant to Alabama's Deceptive Trade Practices Act, Ala. Code §§ 8-19-1, *et seq.*, the ("Alabama DTPA"). (D.I. 34 at 19 n. 12) As Plaintiffs argue, they "need not plead reliance when they allege misrepresentations by concealment or omission" to state a claim under the Alabama DTPA. *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1339–1340 (D. Kan. 2018) (citing *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *12–13 (C.D. Cal. June 24, 2016)). The parties do not dispute that Plaintiffs' claims under Florida, New Jersey, and North Carolina law, as well as Plaintiffs' other New York consumer protection claim,[26] do not require reliance but do require causation. (D.I. 32 at 19 n.43; D.I. 34 at 19)

Plaintiffs argue that they have sufficiently alleged reliance and causation in light of the "relaxed" application of Rule 9(b) that courts apply to "omission-based" fraud and state

---

[24] The parties do not cite the specific elements required to state a claim for each applicable consumer protection statute under which Plaintiffs assert their claims. (D.I. 32 at 18–20; D.I. 34 at18–20)

[25] Count 20 of the CAC, which alleges a violation of N.Y. Gen. Bus. Law § 350. (*See* D.I. 1 at ¶¶ 642–49; D.I. 32 at 19 n.43)

[26] Count 19 of the CAC, which alleges a violation of N.Y. Gen. Bus. Law § 349. (*See* D.I. 1 at ¶¶ 633–41; D.I. 32 at 19 n.43)

consumer protection claims.[27] (D.I. 34 at 6–7, 18–19) The CAC contains allegations showing that Plaintiffs relied on specific channels of information in making their purchases, including one or more of the following: conversations with dealership representatives, Monroney[28] stickers, advertisements, and GM's website, among others. (D.I. 1 at ¶¶ 133, 145, 157, 170, 172, 187, 209, 221, 234, 248, 258, 273, 282, 294, 306, 318, 323, 346) In addition, the CAC contains specific allegations that the Defect causes safety issues, for example, distracted driving and backup camera malfunction. (*Id.* at ¶¶ 84–89, 130, 142, 154, 166, 205, 218, 230, 291, 303, 315, 342) Therefore, Plaintiffs have alleged the materiality of GM's failure to disclose the Defect. *Parenteau v. Gen. Motors, LLC*, 2015 WL 1020499, at *6 (C.D. Cal. Mar. 5, 2015) ("Because Plaintiffs have plausibly alleged that the defect poses safety concerns, they have sufficiently alleged that the defect is 'material.'"). In addition, Plaintiffs allege that, had they been aware of the Defect, they would have acted differently. (*See* D.I. 1 at ¶¶ 243, 249, 272, 281, 286, 297, 310, 324, 331, 336, 399, 412, 468, 496, 520, 543, 647, 766) Therefore, Plaintiffs have adequately pleaded reliance on GM's omission for their fraudulent concealment claim and the state consumer protection claims that require reliance. *See Borkman v. BMW of N. Am., LLC*, 2017 WL 4082420, at *8 (C.D. Cal. Aug. 28, 2017) (noting that "reliance is presumed" where a "plaintiff has sufficiently alleged a safety-related defect," and that "had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently" in the context of fraudulent omission) (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)). Finally, the CAC contains damages allegations that GM's failure to disclose the Defect

---

[27] Plaintiffs' citation to *Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507, at *9–12 (E.D.N.Y. Sept. 25, 2015) is inapposite because the court applied a Rule 8 pleading standard in evaluating the sufficiency of the statutory consumer protection claims at issue.

[28] Monroney stickers are "also known as window stickers, that contain important, material information regarding the vehicles from GM." (D.I. 1 at ¶ 93)

22

caused Plaintiffs to pay more for their respective Class Vehicles than they were worth and that they have incurred or will incur repair costs. (D.I. 1 at ¶¶ 132, 144, 156, 169, 180, 190–92, 208, 220, 233, 242, 251–55, 263–64, 272, 281, 293, 305, 317, 331, 345, 767)

However, one named plaintiff, Blanchard, fails to plead reliance. (*See id.* at ¶¶ 235–44) Unlike the other named plaintiffs, Blanchard did not rely on advertisements, representations by dealership salespersons, or Monroney stickers. (*See id.*) Blanchard specifically alleges that she purchased a Class Vehicle based solely "on brand loyalty." (*Id.* at ¶ 244) Accordingly, the CAC lacks any allegation that Blanchard relied on GM's failure to disclose the Defect to her detriment. For this reason, in addition to the economic loss doctrine addressed *infra*, the court recommends dismissing Blanchard's fraudulent concealment claim along with her claim pursuant to Michigan's Consumer Protection Act, MICH. COMP. LAWS § 445.903 *et seq.*[29]

GM also argues that the claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ( "NJCFA"), brought by Gruchacz and Tyson should be dismissed for failing to plead an ascertainable loss[30] because both Gruchacz and Tyson admit that they did not seek to have their respective Class Vehicles repaired during the warranty period. (D.I. 32 at 20 (citing D.I. 1 at ¶¶ 260, 269)) Some courts have held that "where a vehicle component has outperformed the warranty period, the plaintiff cannot meet the pleading requirements for an 'ascertainable loss.'" *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *6 (D.N.J. Dec. 29,

---

[29] Count XXIX of the CAC is Blanchard's fraudulent concealment claim; Count XII is her Michigan consumer protection claim. (D.I. 1 at ¶¶ 532–50, 759–68)

[30] The parties do not dispute that Plaintiffs must plead an ascertainable loss to successfully state a claim under the NJ CFA. (D.I. 32 at 20; D.I. 34 at 19–20) To successfully state a claim under the NJ CFA, "a plaintiff must allege: (1) an unlawful practice by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements—defendant's allegedly unlawful behavior and the plaintiff's ascertainable loss." *Nobile v. Ford Motor Co.*, 2011 WL 900119, at *5 (D.N.J. Mar. 14, 2011) (quoting *Parker v. Huber*, 2008 WL 141628, at *2 (D.N.J. Jan 14. 2008)).

23

2011) (collecting cases); *see also Miller v. Chrysler Grp. LLC*, 2014 WL 12617598, \*7 (D.N.J.

June 30, 2014) (noting that other courts in the District of New Jersey have "construed the

NJCFA to bar claims based on defects that materialized outside the time limitation set down in a

manufacturer's warranty"); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, at 443 (D.N.J.

2012) ("New Jersey allows a CFA defense in circumstances where a warranty exists and the

product performs beyond that warranty period.") (quoting *Maniscalco v. Brother Int'l Corp.*

*(USA)*, 627 F.Supp.2d 494, 501 (D.N.J. 2009)). However, "[t]he New Jersey Supreme Court has

held that 'either out-of-pocket loss or a demonstration of loss in value will suffice' to create an

issue of fact related to ascertainable loss." *Miller*, 2014 WL 12617598, \*7 (quoting *Thiedemann*

*v. Mercedes-Benz USA*, 872 A.2d 783, 793 (N.J. 2005)). Gruchacz and Tyson have sufficiently

alleged an ascertainable loss by stating that their Class Vehicles suffered a loss in value as a

result of the CUE on their Class Vehicles becoming unresponsive, cracked, and spider webbed.

(D.I. 1 at ¶¶ 260–61, 268, 271) Therefore, the court recommends denying GM's motion to

dismiss Plaintiffs' NJCFA claims. *See Miller*, 2014 WL 12617598, \*7 (finding that the plaintiffs

had sufficiently pleaded an ascertainable loss under the NJCFA where the plaintiffs alleged "out-

of-pocket expenditures and 'permanent musty or moldy smell'" beyond the timeframe of the

warranty at issue).

#### v. Economic Loss Doctrine

GM moves to dismiss the fraudulent concealment claims of the Plaintiffs from Florida,

Maryland, Michigan, New Jersey, New York, and Texas based on the economic loss doctrine.

(D.I. 32 at 17–18) Courts applying Florida, Maryland, Michigan, New Jersey, New York, and

Texas law recognize the economic loss doctrine. *See Burns v. Winnebago Indus., Inc.*, 2013 WL

4437246, at \*4 (M.D. Fla. Aug. 16, 2013); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 266 (Md.

24

2007); *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, 532 N.W.2d 541, 544–55 (Mich. Ct. App. 1995); *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 336 (D.N.J. 2010); *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 226 (S.D.N.Y. 2001); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 815–17 (Tex. Ct. App. 2006). "The economic loss rule sets forth the circumstances under which 'a tort action is prohibited if the only damages suffered are economic losses.'" *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103 (S.D. Fla. 2019) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013)). In general, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 336 (D.N.J. 2010) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir.1995)). In other words, the economic loss doctrine "bars tort claims for harm sustained to the product alone, as opposed to harm to persons or other property damage." *Id.*

Plaintiffs argue that their fraudulent concealment claims fall under two exceptions to the economic loss doctrine. (D.I. 34 at 17–18) First, Plaintiffs argue their fraudulent concealment claims are omission-based and show that "GM violated the independent duty to avoid fraudulently inducing another to enter into a contract." (*Id.* (citing D.I. 1 at ¶¶ 63–65, 157, 170, 187, 237, 248, 258, 267, 273, 277, 318, 323)) Plaintiffs cite several cases[31] holding that the economic loss doctrine does not apply to fraudulent inducement claims. (*Id.* at 17 n. 10)

---

[31] *See HTP, Ltd. v. Lineas Aeras Costarricenses S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 591 (E.D. Mich. 2018); *Smith v. Citimortgage, Inc.*, 2015 WL 12734793, *7 (D.N.J. Dec. 22, 2015); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015); *In re Takata Airbag Prod. Liab. Litig.*, 2020 WL 2764196, at *10 (S.D. Fla. May 27, 2020); *Peterson Grp., Inc. v. PLTQ Lotus Grp., LP*, 417 S.W.3d 46, 62 (Tex. App. 2013).

However, Plaintiffs' claims are fraudulent concealment claims, not fraudulent inducement claims. (*See* D.I. 1 at ¶¶ 759–68) As a result, the exceptions to the economic loss doctrine discussed in the cases cited by Plaintiffs do not apply. Because Plaintiffs allege purely economic damages (*see* D.I. 1 at ¶¶ 169, 180, 195, 242, 255, 264, 271, 280, 317, 331), the economic loss doctrine bars their fraudulent concealment claims under Florida, Michigan, New Jersey, New York, and Texas law. *See Peters v. Countrywide Home Loans, Inc.*, 2016 WL 2869059, at *5 (D.N.J. May 17, 2016); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1104 (S.D. Fla. 2019); *Murphy v. The Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 603 (E.D. Mich. 2010); *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 225–26 (S.D.N.Y. 2001); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 815–17 (Tex. App. 2006) Therefore, the court recommends dismissing the fraudulent concealment claims asserted by Savage (FL), Palopoli (FL), Kladke (FL), Tubbs (MI), Blanchard (MI), Gruchacz (NJ), Tyson (NJ), Howard (NY), Piazza (TX), and Cox (TX).

Next, Plaintiffs argue their fraudulent concealment claim under Maryland law falls under an exception to the economic loss doctrine because the CAC contains "sufficient allegations of a serious risk of bodily harm or death." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 275 (Md. 2007). GM argues the allegations in the CAC fail to satisfy the Maryland exception. (D.I. 35 at 6) However, the complaint describes three distinct ways in which the defective CUE System distracts drivers: (1) difficulty reading the screen causes drivers to divert their eyes from the road, (2) frustration with the lacking functionality causes drivers to focus their attention on the display, and (3) the malfunctioning touchscreen causes drivers to take their hands from the wheel more often and for longer periods of time. (D.I. 1 at ¶ 89) These three types of distractions were linked to over 3,000 deaths in 2017. (*Id.* at ¶ 88) Accordingly, the complaint contains

"sufficient allegations of a serious risk of bodily harm or death." *See Lloyd*, 916 A.2d at 275. Therefore, the court recommends denying GM's motion to dismiss Plaintiffs' fraudulent concealment claims under Maryland law, at the pleading stage. *See id.* at 265–75 (holding that the "risk of bodily harm or death" exception to the economic loss doctrine applied to fraudulent concealment claims related to allegedly defective seatbacks in automobiles).

GM also argues that Plaintiffs' claims under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") fail because Plaintiffs seek solely economic damages. (D.I. 32 at 23; D.I. 35 at 8)  In response, Plaintiffs argue that courts have not applied the economic loss doctrine to claims under the NCUDTPA where there are facts alleged regarding both a defect and a deceptive act by the defendant. (D.I. 34 at 23)  However, Plaintiffs fail to direct the court to any factual averment in the CAC showing that their NCUDTPA claims seek to recover more than purely economic losses. (*See id.*)  North Carolina has adopted the economic loss rule, "which prohibits the purchaser of a defective product from using tort law to recover purely economic losses." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 625 (M.D.N.C. 2006); *Buffa v. Cygnature Constr. & Dev., Inc.*, 251 N.C. App. 526, 2016 WL 7984216, at \*3 (N.C. Ct. App. 2016); *Artistic S. Inc. v. Lund*, 2015 WL 8476587, at \*7–8 (N.C. Super. Dec. 9, 2015).  North Carolina Plaintiffs Macaisa and Cauthen seek purely economic damages for their NCUDTPA claim. (D.I. 1 at ¶¶ 673)  Therefore, the court recommends dismissing their NCUDTPA claim (Count XXII).

In summary, the court recommends granting GM's motion to dismiss the fraudulent concealment claims (Count XXIX) asserted by Savage (FL), Palopoli (FL), Kladke (FL), Tubbs (MI), Blanchard (MI), Gruchacz (NJ), Tyson (NJ), Howard (NY), Piazza (TX), and Cox (TX); denying GM's motion to dismiss the fraudulent concealment claims (Count XXIX) asserted by

27

the remaining plaintiffs: Robinson (AL), Schellhammer (AL), Bradley (IN), Toda (KS), Glenn (MD), Macaisa (NC), Cauthen (NC), and Conroe (WV); and granting GM's motion to dismiss the NCUDTPA claim (Count XXII) by Macaisa and Cauthen.

### b. State Law Consumer Protection Claims, State-Specific Grounds[32]

#### i. Timeliness

GM argues that the Alabama, Florida, Indiana, Maryland, New York, and Texas state consumer protection claims brought by Robinson, Schellhammer, Kladke, Palopoli, Savage, Bradley, Glenn, Howard, Cox, and Piazza are time-barred because they are based on alleged omissions by GM and an injury suffered "at the time of purchase," which GM argues was beyond the limitations period for each of these claims. (D.I. 32 at 20, 20 n. 45) In response, Plaintiffs successfully argue, for reasons specific to each statute, that their Alabama, Florida, Indiana, Maryland, and Texas state consumer protection claims are timely, but Plaintiffs fail to argue that their New York consumer protection claims are timely. Therefore, the court recommends denying GM's motion to dismiss the state specific claims addressed, *infra*, except for Plaintiffs' claims under New York law.

#### 1. Alabama

Robinson and Schellhammer bring claims under Alabama's Deceptive Trade Practices Act ("ADTPA"). (D.I. 1 at ¶¶ 380–404) No action may be brought under the ADTPA "more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice which is the subject of the action, but in no event may any action be brought under this chapter more than four years from the date of the transaction giving rise to the cause

___

[32] *See* section IV.a., *supra*, for a discussion of Fed. R. Civ. P. 9(b), the elements of reliance, causation, and damages, and the economic loss doctrine.

28

of action unless the contract or warranty is for more than three years." Ala. Code § 8-19-14. "If the contract or warranty is for more than three years, no [ADTPA] action may be brought more than one year from the expiration date of the contract or warranty or more than one year after the person bringing the action discovered or reasonably should have discovered the act or practice which is the subject of the action, whichever occurs first."[33] *Id.* However, under "well-settled Alabama law," the issue of "when a plaintiff should have discovered" the fraud alleged in connection with an ADTPA claim "should be taken away from the jury and decided as a matter of law only in cases where the plaintiff actually knew of facts that would have put a reasonable person on notice of fraud." *Jones v. Coty Inc.*, 362 F. Supp. 3d 1182, 1212 (S.D. Ala. 2018) (quoting *Wheeler v. George*, 39 So.3d 1061, 1082-83 (Ala. 2009)). This analysis is fact intensive, so the court recommends denying GM's motion to dismiss Plaintiffs' ADTPA claims.

On September 20, 2014, Robinson purchased a Class Vehicle that was covered by a New Vehicle Limited Warranty (the "Warranty") for "4 years or 50,000 miles." (D.I. 1 at ¶¶ 47–48, 119) She "first noticed spider-webbing" on the CUE of her Class Vehicle "around November 2016." (D.I. 1 at ¶¶ 119, 122) Cadillac replaced the CUE on Robinson's Class Vehicle, but "[r]oughly a year and half" later she "again noticed spider-webbing on the upper-right side of the CUE." (*Id.* at ¶¶ 122–24) Schellhammer purchased a used model year 2014 Class Vehicle around December 2015 and "first noticed spider-webbing on the CUE" in June 2018. (*Id.* at ¶ 137) The parties do not dispute that Robinson and Schellhammer filed their Alabama DTPA claims on September 4, 2019. (*See* D.I. 32 at 20–21 n. 46; D.I. 34 at 20–22) However,

---

[33] GM argues that Plaintiffs' ADTPA "claims are time-barred under both the one-year and four-year limits" imposed by Alabama law. (D.I. 32 at 21, 21 n.50) The parties did not include any substantive analysis of the ADTPA's statute of repose or its application to Plaintiffs' claims. (D.I. 32; D.I. 34; D.I. 35)

encountering the Defect does not automatically trigger the Alabama DTPA's statute of

limitations. *See Jones*, 362 F. Supp. 3d at 1213 (declining to resolve the timeliness of the

plaintiffs' claims under the Alabama DTPA at the summary judgment stage despite the fact that

the plaintiffs "had experienced an adverse reaction to the" product at issue longer than one year

before filing their complaint because a factual issue remained as to whether the plaintiffs "had

actual knowledge" that "the warnings on the [product at issue] were misleading or deceptive"

when they first experienced an adverse reaction to the product). Whether Robinson and

Schellhammer had actual knowledge of GM's fraud more than one year before they filed their

claims, and whether they had such knowledge more than one year from the expiration of the

Warranty, are a factual issues not appropriate for resolution at the motion to dismiss stage.[34] *See

id.*; *Miller*, 2014 WL 12617598, at *2 ("Where the timeliness of a cause of action is not apparent

from the face of the complaint, 'then it may not afford the basis for a dismissal of the complaint

under Rule 12(b)(6).'") (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir.

1978)).

## 2. Florida & Indiana

Savage asserts a claim under the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA"). (D.I. 1 at ¶¶ 405–13) Savage purchased a Class Vehicle "in or around July

2013." (*Id.* at ¶ 24) Plaintiffs do not dispute that Savage originally filed her claim on September

16, 2019. (D.I. 32 at 20 n.46; D.I. 34) The statute of limitations for Savage's FDUTPA claim is

four years. *S. Motor Co. of Dade Cty. v. Doktorczyk*, 957 So. 2d 1215, 1217–18 (Fla. Dist. Ct.

---

[34] GM argues that *Jones* is distinguishable because it dealt with summary judgment, not a motion to dismiss. (D.I. 35 at 15) GM's argument is not persuasive because at the pleading stage the court must accept as true all well pleaded factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Umland v. Planco Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

App. 2007). Similarly, Bradley asserts a claim under the Indiana Deceptive Consumer Sales Act ("IDCSA"). (D.I. 1 at ¶¶ 452–73) Bradley purchased a Class Vehicle "on or around September 2013." (*Id.* at ¶ 25) Plaintiffs do not dispute that Bradley originally filed her claim on September 4, 2019. (D.I. 32 at 20 n.46; D.I. 34) The statute of limitations for Bradley's IDCSA claim is two years. Ind. Code Ann. § 24-5-0.5-5(b). However, as described in section IV.a, *supra*, Plaintiffs have plausibly alleged GM's fraudulent concealment (*see* D.I. 1 at ¶¶ 357–61), which tolls the statute of limitations for claims under the FDUTPA and IDCSA at the pleading stage. *See In re Takata Airbag Products Liab. Litig.*, 255 F. Supp. 3d 1241, 1258–59 (S.D. Fla. 2017) (denying a motion to dismiss a FDUTPA claim because statute of limitations could be equitably tolled due to the defendant's alleged fraudulent concealment); *Cwiakala v. Econ. Autos, Ltd.*, 587 F. Supp. 1462, 1466 (N.D. Ind. 1984) (declining to grant summary judgment for the defendant with respect to an IDCSA claim because allegations of fraudulent concealment tolled the statute of limitations where the concealment alleged was "active and intentional").

### 3. Maryland

Glenn asserts a claim under the Maryland Consumer Protection Act ("MCPA"). (D.I. 1 at ¶¶ 510–21) The statute of limitations for Glenn's MCPA claim is three years. *Markey v. Wells Fargo Bank, N.A.*, 2019 WL 1282075, at \*8 (D. Md. Mar. 20, 2019). However, a claim under the MCPA does not accrue until the plaintiff is put on notice of the alleged wrong. *See Sternberger v. Kettler Bros., Inc.*, 718 A.2d 619, 621 (Md. Ct. Spec. App. 1998); *see also Mitchell v. U.S. Bank Nat'l Ass'n*, 2018 WL 4679949, at \*6 (D. Md. Sept. 28, 2018) (quoting *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 272 (D. Md. 2015)). Glenn purchased a Class Vehicle "[i]n or around July 2016." (*Id.* at ¶ 223) However, she "first noticed spider-webbing on the CUE" in or around April 2019. (*Id.* at 226) Plaintiffs do not dispute that

31

Glenn originally filed her claim on September 4, 2019.  (D.I. 32 at 20 n.46; D.I. 34)  Therefore, at the pleading stage, Glenn's MCPA claim is timely.

## 4.  New York

GM seeks dismissal of Howard's claims under New York General Business Law §§ 349 and 350 based her failure to bring them within an applicable three-year statute of limitations.[35] (D.I. 32 at 20–21 n.48)  Plaintiffs failed to respond to GM's statute of limitations argument with respect to Howard's consumer protection claims.  (*See* D.I. 34 at 20–22)  Accordingly, any opposition is waived.  *See Blakeman v. Freedom Rides, Inc.*, C.A. No. 12-416-LPS-CJB, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) ("In such situations, where a party responds to a dispositive motion, but only attempts to defend some subset of the claims that are subject to the motion, courts have consistently held that the claims that are not defended are deemed abandoned.").  Therefore, the court recommends granting GM's motion to dismiss Howard's § 349 claim (Count XIX in the CAC) and her § 350 claim (Count XX in the CAC).

## 5.  Texas

Cox and Piazza assert claims under the Texas Deceptive Trade Practices Act ("Texas DTPA").  (D.I. 1 at ¶¶ 720–27)  The statute of limitations for claims under the Texas DTPA is two years.  *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 492 (Tex. App. 1992), *writ denied* (July 1, 1992) (quoting Tex. Bus. & Com. Code Ann. § 17.565).  "Under the [Texas] DTPA, the statute of limitations begins to run when the deceptive act or practice occurs or, if the deception

---

[35] "Actions brought pursuant to Section 349 must be commenced within three years of the date of accrual," which "occurs when plaintiff is injured by the deceptive act or practice that violated the statute."  *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484  (E.D.N.Y. 2011) (internal citations omitted); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 442 (E.D.N.Y. 2007) ("New York courts have uniformly applied a three-year statute of limitations to N.Y. Gen. Bus. Law §§ 349 and 350 cases.").

is concealed, when the plaintiff, in the exercise of reasonable diligence, should have discovered the occurrence of the misrepresentation made the basis of the complaint." *Id.* (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Black v. Wills*, 758 S.W.2d 809, 816 (Tex. App. 1988)). Cox "first noticed spider-webbing on the lower left side of the CUE" inside her Class Vehicle "[i]n or around November 2018." (D.I. 1 at ¶ 311) Plaintiffs do not dispute that Cox originally filed her claim on September 4, 2019. (D.I. 32 at 20 n.46; D.I. 34) Therefore, at the pleading stage, Cox's Texas DTPA claim is timely. *See* Tex. Bus. & Com. Code Ann. § 17.565.

The CUE on Piazza's Class Vehicle "began to crack and malfunction" around August 2016. (D.I. 1 at ¶ 325) On August 12, 2016, Piazza took her Class Vehicle to an authorized Cadillac dealer. (*Id.* at ¶ 326) The dealership's technicians replaced the CUE, but "[i]n or around June 2019," the CUE malfunctioned again. (*Id.* at ¶ 327) On June 20, 2019, Piazza returned to an authorized Cadillac dealer to have the CUE on her Class Vehicle replaced for the second time. (*Id.*) Plaintiffs do not dispute that Piazza originally filed her claim on September 16, 2019. (D.I. 32 at 20 n.46; D.I. 34) However, based on the allegations in the CAC, there remains a factual issue as to when Piazza "discovered or should have discovered the" Defect, which precludes dismissal at the pleadings stage. *See Sw. Bell Media*, 825 S.W.2d at 492–93 ("The date the plaintiff discovered or should have discovered the misrepresentation is a question of fact.").

## ii. Substantive, State-Specific Grounds

### 1. Kansas & Michigan

GM argues that Toda's claim (Count VIII) under the Kansas Consumer Protection Act ("KCPA") fails because it seeks actual damages and monetary relief is unavailable under the

KCPA. (D.I. 32 at 22; D.I. 1 at ¶¶ 481–500) GM also argues that the claims asserted under the Michigan Consumer Protection Act ("Michigan CPA") by Tubbs and Blanchard (Count XII) fail because motor vehicle sales are exempt under the statute. (D.I. 32 at 22; D.I. 1 at ¶¶ 532–550) As GM notes, Plaintiffs conceded in their opposition brief with respect to GM's motion to dismiss in *Goldstein v. General Motors LLC*, C.A. No. 3:19-cv-1778 (S.D. Cal.) (D.I. 37 at 24 n.24), that they could not state claims under the KCPA or the Michigan CPA. (D.I. 32 at 22 n.52) Plaintiffs do not address this point in their answering brief in the instant case. (See D.I. 34). Nor do they explain how the factual averments in the CAC successfully state claims for relief under Kansas and Michigan law. (*See id.*) As Plaintiffs have waived opposition, the court recommends granting GM's motion and dismissing Plaintiffs' claims under the KCPA (Count VIII) and the Michigan CPA (Count XII).[36]

## 2. Maryland

GM argues that Glenn's claim under the MCPA fails because the CAC lacks allegations that she suffered a "cognizable injury" that is "objectively identifiable." (D.I. 32 at 22) More specifically, GM argues that Glenn's allegations that she would not have purchased a Class Vehicle or would have paid less for it had she known of the Defect are insufficient to state a MCPA claim. (*Id.* (citing D.I. 1 at ¶ 520)) Plaintiffs argue that an allegation regarding a future need for repairs to address the Defect is sufficient to state a claim under the MCPA. (D.I. 34 at 23) "[T]o to articulate a cognizable injury under the [MCPA], the injury must be objectively identifiable." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621 (D. Md. 2014) (quoting *Lloyd*, 916 A.2d at 277)). In *Lloyd*, the court found that the plaintiffs' had stated a

---

[36] This court's recommendation of dismissal of Count XII with respect to Blanchard here is an additional ground for dismissal of her claim as discussed in section IV.a.iv, *supra*, related to reliance.

cognizable injury based on their allegations that "as a result of the [defendants']

misrepresentation or omission, they suffered a loss, measured by the amount it will cost them to

repair the defective [product at issue]." *Lloyd*, 916 A.2d at 281. Glenn alleges that, had GM

disclosed the Defect, she "would not have purchased, or would have paid significantly less, for"

her Class Vehicle. (D.I. 1 at ¶ 520) Glenn also alleges that, as a result of GM's failure to

disclose the Defect, she "paid or will be required to pay significantly more to repair or replace

the CUE than is reasonably anticipated and represented, and the Vehicles have suffered

diminution in value." (*Id.*) Thus, Glenn has stated a cognizable injury as required to state a

claim under the MCPA, and the court recommends denying GM's motion to dismiss Count X of

the CAC. *Cf. Chambers*, 43 F. Supp. 3d at 622 (discussing *Jones v. Koons Auto., Inc.*, 752 F.

Supp. 2d 670, 684 (D. Md. 2010), and dismissing a MCPA claim where the plaintiff had alleged

only that she had been "overcharged" and specifically stated that she had not "suffered damages

on the basis of 'a diminished post-sale value of the vehicles,'" among other things).

### 3. New Jersey

GM argues that Plaintiffs' claim under the New Jersey Truth-in-Consumer, Contract,

Warranty and Notice Act ("TCCWNA") fails for the same reasons GM argues Plaintiffs' claims

under the NJCFA fails. (D.I. 32 at 23; D.I. 35 at 8) Plaintiffs do not dispute that their

TCCWNA claim is based on their NJCFA claim. (D.I. 34 at 23; D.I. 1 at ¶ 603) However, as

discussed in section IV.a.iv, *supra*, Plaintiffs have pleaded an ascertainable loss and have stated a

claim under the NJCFA. Therefore, the court recommends denying GM's motion to dismiss

Plaintiffs' TCCWNA claim. *See Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134 (3d Cir.

2014) ("The rights and responsibilities to be enforced by TCCWNA are drawn from other

legislation. One such piece of legislation is the [NJ]CFA."); *cf. Truglio v. Planet Fitness, Inc.*,

360 F. Supp. 3d 274, 279–80 (D.N.J. 2018) (dismissing a TCCWNA claim where the plaintiff had not alleged a monetary loss and where the plaintiff's TCCWNA was "premised on the same allegations" as the plaintiff's NJCFA claim).

### c. Breach of Express Warranty

GM argues that Plaintiffs' Florida, Michigan, New Jersey, and Texas breach of express warranty claims fail. [37] (D.I. 32 at 23–27; D.I. 35 at 8–11) The plaintiffs and states relevant to GM's arguments are: Kladke (Florida), Palopoli (Florida), Savage (Florida), Blanchard (Michigan), Tubbs (Michigan), Gruchacz (New Jersey), Tyson (New Jersey), Cox (Texas), and Piazza (Texas).[38] (*See* D.I. 1 at ¶¶ 19–38, 118–346, 414–51, 551–72, 589–97, 682–703)

### i. Experiencing the Defect and Seeking Repairs

GM argues Plaintiffs' express warranty claims[39] fail because the CAC lacks allegations that Plaintiffs "experienced" the Defect during the warranty period, "presented" their Class Vehicles for repair during the warranty period, and GM refused or failed to repair their Class Vehicles. (D.I. 32 at 23) In response, Plaintiffs argue that GM's argument fails to consider their theory that GM knew about the Defect and the fact that it existed in all Class Vehicles "at the

---

[37] GM moves to dismiss all of the breach of express warranty claims asserted in the CAC: Count IV (FL), Count XIII (MI), Count XVIII (NJ), and Count XXIV (TX). (D.I. 32 at 1)
[38] Neither party cited the elements required to plead a breach of an express warranty claim under the laws of the states at issue. (*See* D.I. 32 at 23–27; D.I. 34 at 23–27; D.I. 35 at 8–11) Under New Jersey law, for example, "a breach of express warranty claim has four elements: '(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.'" *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *23 (D.N.J. Nov. 30, 2011) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).
[39] GM argues that Plaintiffs' Florida, Michigan, New Jersey, and Texas breach of express warranty claims fails on the basis that the CAC lacks allegations of experiencing the defect and seeking repairs. (D.I. 32 at 23)

time of sale." (D.I. 34 at 23–24) Plaintiffs also argue the CAC contains plausible factual allegations that the Defect manifested within the Warranty's coverage period. (*Id.* at 24–25)

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992). "[T]he general rule . . . is that 'an express warranty does not cover repairs made after the applicable'" warranty period has elapsed. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)). Accordingly, "'latent defects' discovered after the term of the warranty are not actionable." *Id.* (quoting *Abraham*, 795 F.2d at 249–50). Plaintiffs' express warranty claims are based on a New Vehicle Limited Warranty (the "Warranty"), which GM provided to all purchasers and lessees of the Class Vehicles. (D.I. 1 at ¶ 47) The Warranty "covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." (*Id.* at ¶ 48) Warranty coverage "begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period," which is "4 years or 50,000 miles, whichever comes first." (*Id.*) To have a vehicle repaired under the Warranty, the owner must "take the vehicle to a Cadillac dealer facility within the warranty period and request the needed repairs." (*Id.*)

The court recommends dismissing the express warranty claims asserted by Kladke (Count IV) and Cox (Count XXIV) because the CAC lacks plausible allegations that they ever took their respective Class Vehicle to GM and requested repairs, an undisputed requirement under the terms of the Warranty. (*See id.* at ¶¶ 48, 158–170, 307–18). The court recommends dismissing the express warranty claim asserted by Tubbs (Count XIII) because she requested a repair after the Warranty expired. (*See id.* at ¶¶ 245–256)

37

Although they contacted GM after noticing the Defect, the court recommends dismissing the express warranty claims asserted by Blanchard (Count XIII) and Tyson (Count XVIII). (*See id.* at ¶¶ 47–48, 235–244, 265–73) They do not plausibly allege that their vehicles were within the Warranty period when they contacted GM because they do not plead the date their respective Class Vehicles were "first delivered or put in use"[40] or the date and milage of their Class Vehicles when they sought repairs. (*See id.*) Similarly, Gruchacz avers that she took her Class Vehicle to a GM dealership "while her vehicle was still within the 4-year, 50,000-mile warranty period." (*Id.* at ¶ 260) However, Gruchacz fails to plausibly allege that her Class Vehicle was covered by the Warranty when she sought repairs because she does not plead the mileage on her Class Vehicle when she did so. (*Id.* at ¶¶ 257–64) Therefore, the court also recommends dismissing Gruchacz's express warranty claim (Count XVIII).

Palopoli (Count IV), Savage (Count IV), and Piazza (Count XXIV) admit in the CAC that GM repaired their Class Vehicles at no cost when they presented them for repair within the term of the Warranty. (*Id.* at ¶¶ 171–82, 183–96, 319–32) Piazza does not allege that the Defect manifested in her Class Vehicle's CUE since GM repaired it a second time. (*Id.* at ¶¶ 319–32) Palopoli and Savage do not allege (1) that they took their Class Vehicles back to a dealership for repair when they noticed the Defect again after GM had repaired them at no cost and (2) that GM refused to repair them again within the term of the Warranty. (*Id.* at ¶¶ 171–96) Palopoli, Savage, and Piazza fail to allege that GM refused to repair the Defect when they sought repairs within the Warranty's term. Therefore, the court recommends dismissing their breach of express warranty claims in Counts IV and XXIV.

_____

[40] Blanchard and Tyson purchased their Class Vehicles used. (D.I. 1 at ¶¶ 236, 266)

Plaintiffs citation to *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558 (D.N.J. 2012) is unpersuasive. In *Nelson*, the court found that the failure by some of the plaintiffs to "seek repairs during the pendency of the warranty period" was not fatal to their express warranty claims. *Nelson*, 894 F. Supp. 2d at 564–65. The plaintiffs had alleged that the defendant knew a defect covered under the warranty was present at the time of sale and that plaintiffs had "allegedly experienced symptoms of the defect during the warranty period." *Id.* at 565. However, *Nelson* does not discuss whether the warranty at issue required the vehicle owner to "take the vehicle to a . . . dealer facility within the warranty period and request the needed repairs," as is required under the GM warranty at issue. (*See* D.I. 1 at ¶ 48) In addition, the plaintiffs in *Nelson* alleged more detailed facts regarding vehicle purchase dates, vehicle mileage, and information concerning the dates the defect appeared and repairs were sought. *Nelson*, 894 F. Supp. 2d at 561–63, 564–65.

### ii. Unconscionability

Plaintiffs argue that, regardless of whether they presented their Class Vehicles to dealerships for repairs within the coverage period, the CAC contains plausible allegations that the durational limits of the Warranty are unconscionable. (D.I. 34 at 25–26) "Where the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state [an express warranty] claim if he alleges that the warranty was unconscionable." *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014) (citing *Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *7 (D.N.J. July 21, 2010)). "The traditional rule . . . is that a plaintiff must plead both substantive as well as procedural unconscionability." *Id.* at *14.

A contract term is substantively unconscionable if it is "'excessively disproportionate,' involving an 'exchange of obligations so one-sided as to shock the court's conscience.'" *Id.* at *13 (quoting *Delta Funding Corp. v. Harris*, 912 A.2d 104, 120 (N.J. 2006)). Plaintiffs argue the Warranty is substantively unconscionable because: (1) "GM knew the Defect typically manifests within and/or shortly outside of the warranty period"; (2) "GM failed to disclose the Defect to consumers"; and (3) "GM intentionally offers temporary, ineffectual fixes until the Warranty periods expire." (*Id.* at 25 (citing D.I. 1 at ¶¶ 371, 426, 563, 694)) However, Plaintiffs' allegations regarding GM's knowledge of the Defect at the time of sale do not render the duration of the Warranty unconscionable.[41] *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 597 (D.N.J. 2016) ("Plaintiffs' allegation that Defendant knew of a latent defect at the time it issued its Warranty, even if true, does not render the warranty unconscionable."). Moreover, based on the facially plausible allegations in the CAC, the court does not find that the terms of the Warranty are "so one-sided as to shock the court's conscience." *See Skeen*, 2014 WL 283628, at *13. The court's finding is in line with several other courts who have held that vehicle warranties with durational terms similar to the Warranty at issue here—4 years/50,000 miles—are not substantively unconscionable. *See, e.g.*, *Goldstein v. Gen. Motors LLC*, 445 F.

---

[41] Plaintiffs' citation to *Skeen*, which courts have acknowledged is an outlier, is unpersuasive. *See Canfield v. FCA US LLC*, C.A. No. 17-1789-MN-SRF, 2019 WL 133402, at *8–9 (D. Del. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1089798 (D. Del. Mar. 8, 2019); *see also Alban v. BMW of N. Am.*, 2011 WL 900114, at *9 n.8 (D.N.J. Mar. 15, 2011) (characterizing a line of cases finding "a manufacturer's knowledge of a defect as a basis for unconscionability" and deeming "bare-bones allegations of the absence of 'a meaningful choice' and 'disparate bargaining power'" as being wrongly decided for relying on *Carlson v. General Motors Corp.*, 883 F.2d 287, 292 (4th Cir.1989), a decision out of sync with *Twombly/Iqbal*). Moreover, the plaintiffs in *Skeen* had sufficiently pleaded substantive unconscionability "by claiming that [the defendants] knew the timing chain tensioners would fail and manipulated the warranty terms to avoid paying for it." *See Skeen*, 2014 WL 283628, at *14–15. Plaintiffs make no such allegations in the CAC.

Supp. 3d 1000, 1015 (S.D. Cal. 2020); *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *1, 3–4 (D.N.J. Oct. 31, 2011) *Alban v. BMW of N. Am.*, 2011 WL 900114, at *8 (D.N.J. Mar. 15, 2011); *see also Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *14 (D.N.J. Jan. 24, 2014) ("A motor vehicle warranty of 4 years and 50,000 miles is not per se unconscionable.").

Plaintiffs also argue that they have pleaded "procedural unconscionability by alleging they 'had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM,' and that 'gross disparity in bargaining power existed between GM and the Class members.'" (*Id.* at 26 (citing D.I. 1 at ¶¶ 429, 566, 661, 697)) However, Plaintiffs allegations regarding procedural unconscionability are conclusory. (*See* D.I. 1 at ¶¶ 429, 566, 661, 697) Therefore, the court recommends finding that the durational terms of the Warranty, in light of the conclusory allegations in the CAC, are not procedurally unconscionable. *See Alban*, 2011 WL 900114, at *9 (dismissing a breach of express warranty claim and rejecting the argument that the warranty was procedurally unconscionable based on "bare-bones allegations" that the plaintiff "'had no meaningful choice in determining' the time and mileage limitation, and that 'a gross disparity in bargaining power existed between' him and [the defendant car manufacturer]").

Therefore, the court recommends granting GM's motion with respect to Plaintiffs' breach of express warranty claims and dismissing all such claims in the CAC: Counts IV, XIII, XVIII, and XXIV of CAC.[42]

---

[42] In light of this recommendation, the court does not address GM's alternative argument that Plaintiffs' express warranty claims fail because the Warranty does not cover design defects like the Defect alleged in the CAC. (D.I. 32 at 25–27)

41

### d. Breach of Implied Warranty

GM argues that all of Plaintiffs' implied warranty claims under Uniform Commercial Code § 2-314 fail because the CAC lacks allegations that the Defect occurred within the durational term of the Warranty.[43] (D.I. 32 at 29–30)  Plaintiffs do not argue that they have plausibly alleged that their implied warranty claims fall within the Warranty's durational terms. (D.I. 34 at 29–30)  Instead, Plaintiffs rely on their argument that the CAC contains plausible allegations that the durational limit of the Warranty is unconscionable and that it would be premature for the court to decide the unconscionability issue at the pleading stage.[44] (D.I. 34 at 29–30)  However, for the reasons discussed in section IV.c.ii, *supra*, the court rejects Plaintiffs' unconscionability argument.

Consistent with UCC § 2-316, manufacturers may limit the duration of an implied warranty to the duration of an express warranty. *See, e.g.*, *Deburro v. Apple, Inc.*, 2013 WL 5917665, at *6 (W.D. Tex. Oct. 31, 2013) ("Texas law allows sellers to disclaim (or "exclude") implied warranties."); *Meserole v. Sony Corp. of Am., Inc.*, 2009 WL 1403933, at *9 (S.D.N.Y. May 19, 2009) ("U.C.C. § 2–316 permits manufacturers to limit the duration of implied warranties to the duration of their express warranties if such limitation is clear and conspicuous."); *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402, at *6–7 (D.N.J. Mar. 31, 2008). The Warranty includes the following provision, in bold-face type, limiting the

---

[43] GM moves to dismiss all of the breach of implied warranty claims asserted in the CAC: Count V (FL), Count VII (IN), Count IX (KS), Count XI (MD), Count XIV (MI), Count XVII (NJ), Count XXI (NY), Count XXIII (NC), Count XXV (TX), and Count XXVIII (WV).  (D.I. 32 at 1)
[44] Plaintiffs cite *Carlson v. General Motors Corp.*, 883 F.2d 287, 292 (4th Cir. 1989) in support of their position.  (D.I. 34 at 29–30)  However, as discussed in *Alban*, the conclusion reached in *Carlson* with respect to unconscionability fails to satisfy the pleading standard set forth in *Twombly* and *Iqbal* because "conclusory allegations are insufficient to survive a motion to dismiss." *See Alban*, 2011 WL 900114, at *9 n.8.

42

duration of the implied warranty: "Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty." (D.I. 1 at ¶ 48) (emphasis omitted) The duration of the Warranty is "4 years or 50,000 miles, whichever comes first." (*Id.*)

The court notes, for example, Glenn (Count XI) purchased a new Class Vehicle "[i]n or around July 2016" and first noticed the Defect "[i]n or around April 2019." (D.I. 1 at ¶¶ 223, 226) However, the CAC lacks any allegation about the mileage on Glenn's Class Vehicle when the Defect manifested, a necessary fact for determining whether the incident occurred within the durational limit of the Warranty. (*See id.* at ¶ 48) Without pleading the mileage of Glenn's Class Vehicle when the Defect first manifested, it is not plausible that Glenn suffered a loss within the durational limit of the Warranty. Moreover, Toda (Count IX), Cauthen (Count XXIII), Macaisa (Count XXIII), and Conroe (Count XXVIII) purchased used model year 2013 and 2014 Class Vehicles and allege that they discovered the Defect on their respective vehicles in 2019, outside the four-year durational limit. (*See id.* at ¶¶ 48, 211, 214, 284, 287, 296, 298, 334, 337) Plaintiffs do not direct the court to plausible allegations in the CAC showing that the that their implied warranty claims arose within the durational limit of the Warranty. (*See* D.I. 34) Therefore, court recommends granting GM's motion with respect to Plaintiffs' breach of implied warranty claims and dismissing all such claims in the CAC: Count V (FL), Count VII (IN), Count IX (KS), Count XI (MD), Count XIV (MI), Count XVII (NJ), Count XXI (NY), Count XXIII (NC), Count XXV (TX), and Count XXVIII (WV).[45] *See New Jersey Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 324–25, 330 (3d Cir. 2007) (holding that the plaintiff

---

[45] In light of this recommendation, the court does not address GM's unmerchantability, timeliness, and privity arguments with respect to Plaintiffs' implied warranty claims. (*See* D.I. 32 at 30–32)

could not "rely on the implied warranties of merchantability and fitness for a particular purpose to recover damages, where the contract's one-year express warranty had expired at the time of the loss").

### e. MMWA

The parties agree that MMWA claims (Count I) are "based on breaches of express and implied warranties under state law depend upon those state law claims." *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008), *aff'd*, 374 F. App'x 250, 254 (3d Cir. 2010); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 601 (D.N.J. 2016) ("Having failed to state a viable state law claim for breach of express warranty, Plaintiffs' derivative MMWA claim must also be dismissed."). GM argues that Plaintiffs' MMWA claims fail because their express and implied warranty claims based on state law fail. (D.I. 32 at 32) As stated in sections IV.c. and IV.d., *supra*, the court recommends dismissing all of Plaintiffs' express and implied warranty claims. Therefore, the court recommends dismissing Plaintiffs' MMWA claims. *See Cooper*, 374 F. App'x at 254 ("[Plaintiff's] Magnuson–Moss claim is based upon his state law claims of breach of express and implied warranties. Since the District Court correctly dismissed both of those claims, [Plaintiff's] Magnuson–Moss claim was also properly dismissed.").[46]

---

[46] GM also argues that Plaintiffs' MMWA claims fail because Plaintiffs cannot satisfy the statute's jurisdictional requirements. (D.I. 32 at 32) Under 15 U.S.C. § 2310(d)(3)(C), no plaintiff can plead a cognizable MMWA claim where (1) "the action is brought as a class action," and (2) "the number of named plaintiffs is less than one hundred." The CAC contains only 19 named plaintiffs. (*See* D.I. 1 at ¶¶ 19–38) As discussed in note 3, *supra*, Braden has been dismissed from the instant suit, leaving 18 active named plaintiffs. (D.I. 36; D.I. 37) Courts disagree about whether a MMWA claim in a putative class action may proceed at the pleading stage with less than 100 named plaintiffs. *Compare Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020) ("CAFA may not be used to evade or override the MMWA's specific numerosity requirement."), *with Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (agreeing with the district courts who, as a general rule, have "held that the

### f. Unjust Enrichment – Count XXX

#### i. Nationwide Unjust Enrichment Claims

Count XXX of the CAC is a claim for unjust enrichment brought "On Behalf of the

Nationwide Class or Alternatively, each of the State Sub-Classes." (*See* D.I. 1 at ¶¶ 769–75)

First, GM argues that Plaintiffs lack standing to assert a nationwide unjust enrichment claim

because the complaint lacks named plaintiffs from the remaining 39 states, and Plaintiffs "cannot

represent putative class members from other states." (D.I. 32 at 33) In response, Plaintiffs argue

that at the pleading stage they need only establish that they have standing to pursue their own

claims, and whether Plaintiffs have standing as to the nationwide class is an issue for class

certification.[47] (D.I. 34 at 33) The court finds that, at the pleadings stage, Plaintiffs lack

standing to assert unjust enrichment claims under the common law of states in which Plaintiffs

did not suffer an alleged injury. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194,

222–223 (D.N.J. 2020); *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *5–6 (D.N.J.

June 6, 2014); *see also Lewis v. Mercedes-Benz United States*, 2021 WL 1216897, at *4–8 (S.D.

Fla. Mar. 30, 2021); *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1020–22 (S.D. Cal.

---

CAFA effectively supercedes [*sic*] the MMWA's more stringent jurisdictional requirements.").
The parties do not cite Third Circuit authority on this this issue, and district courts within the
Third Circuit disagree about it. *See, e.g.*, *In re Subaru Battery Drain Products Liab. Litig.*, 2021
WL 1207791, at *19–20 (D.N.J. Mar. 31, 2021) ("The parties' dispute reflects a disagreement in
this district as to whether courts may exercise jurisdiction over MMWA claims where, as here, a
complaint fails to name 100 plaintiffs but where the court otherwise has jurisdiction to hear the
case."). Because the court recommends dismissal of Plaintiffs' MMWA claims as a result of
Plaintiffs' failure to plead state law warranty claims, the court does not make a recommendation
on this point.

[47] Among other cases, Plaintiffs cite *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent
Actions*, 148 F.3d 283 (3d Cir. 1998) and *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d
Cir. 2015) in support of their position. (D.I. 34 at 33) However, those cases do not directly
address the issue before court. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194,
222–23 (D.N.J. 2020) (distinguishing *Neale*).

2020). Therefore, the court recommends dismissing the unjust enrichment claims alleged in Count XXX on behalf of the Nationwide Class.

### ii. Express Contract & Adequate Legal Remedy

Next, GM argues that Plaintiffs' remaining unjust enrichment claims fail because "unjust enrichment is not available where there is an express contract" and because Plaintiffs "have an adequate legal remedy in their fraud, consumer protection and warranty claims." (D.I. 32 at 33–34) In response, Plaintiffs assert that whether they can "recover" under a theory of unjust enrichment and another theory simultaneously is immaterial to whether they can "plead" unjust enrichment in the alternative. (D.I. 34 at 34) (emphasis omitted) As Plaintiffs argue, under Federal Rule of Civil Procedure 8(d)(2)&(3), they can plead unjust enrichment in the alternative. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Cajun Steamer Ventures, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1350 (N.D. Ala. 2019) ("Because this case is only at the motion to dismiss stage, [the plaintiff] may plead both breach of contract and unjust enrichment, even though ultimately it will only be able to recover under one category of relief.").

### iii. Plaintiffs' Direct Relationship with GM

GM also argues that Plaintiffs' unjust enrichment claims under Maryland, New Jersey, and Texas law, along with certain of Plaintiffs' unjust enrichment claims under Michigan and North Carolina law, fail because the CAC lacks allegations that the relevant plaintiffs had a direct relationship with GM or that they "conferred a direct benefit on GM." (D.I. 32 at 34) In response, Plaintiffs argue that they have sufficiently alleged that they conferred a benefit on GM by purchasing their Class Vehicles from GM authorized dealerships. (D.I. 34 at 34–35 (citing D.I. at ¶¶ 43–44, 223, 245–46, 284, 308, 319)) GM's argument is a factual argument

46

inappropriate at motion to dismiss stage. *See Umland v. Planco Fin. Servs. Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

### iv. Tortious Conduct

GM argues that Plaintiffs fail to plead an unjust enrichment claim under New Jersey law because "tortious conduct allegations cannot support an unjust enrichment claim under New Jersey law." (D.I. 32 at 35) "To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the 'defendant received a benefit and that retention of that benefit without payment would be unjust' and that Plaintiff 'expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *2 (D.N.J. June 6, 2014) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). However, "New Jersey does not recognize unjust enrichment as an independent tort cause of action." *Id.* at *3 (citing *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999)). Plaintiffs argue their unjust enrichment claims are consistent with New Jersey law without directing the court to any factual averments in the CAC plausibly stating such a claim. (D.I. 34 at 35) Therefore, the court recommends dismissing the unjust enrichment claims asserted by New Jersey plaintiffs Gruchacz and Tyson. *See McGuire*, 2014 WL 2566132, at *3 (dismissing unjust enrichment claims under New Jersey law where the plaintiff asserted "that the Defendant concealed certain defects in and misrepresented the qualities and functionality of the navigation system in the vehicle Plaintiff purchased").

47

**v. Statutes of Limitations**

Last, GM argues the unjust enrichment claims asserted by Savage (FL), Howard (NY), Cox (TX), and Piazza (TX) are time barred. (D.I. 32 at 35) However, as the court discussed in sections IV.a, *supra*, Plaintiffs have plausibly alleged fraudulent concealment by GM, which tolls the relevant statutes of limitation at the pleading stage. *See Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007); *Click v. Gen. Motors LLC*, 2020 WL 3118577, at \*13–14 (S.D. Tex. Mar. 27, 2020); *State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1169–70 (S.D. Fla. 2015). Therefore, the court recommends denying GM's motion to dismiss the state unjust enrichment claims (Count XXX), except for those asserted by Gruchacz and Tyson as explained in the preceding section. (*See* D.I. 1 at ¶¶ 357–61, 769–775)

## V. CONCLUSION

For the foregoing reasons, the court recommends GRANTING-IN-PART and DENYING-IN PART GM's motion WITHOUT PREJUDICE as follows[48]:

a) **Fraudulent Concealment.** DENYING GM's motion to dismiss CAC Count XXIX with respect to Robinson (AL), Schellhammer (AL), Bradley (IN), Toda (KS), Glenn (MD), Macaisa (NC), Cauthen (NC), and Conroe (WV); and GRANTING GM's motion to dismiss CAC Count XXIX with respect to Savage (FL), Palopoli (FL), Kladke (FL), Tubbs (MI), Blanchard (MI), Gruchacz (NJ), Tyson (NJ), Howard (NY), Piazza (TX), and Cox (TX).

---

[48] The court presents its recommendations below in the order the respective Counts are addressed in this Report and Recommendation *supra*. However, the court's recommendations are also set forth in the chart in Appending A, *infra*, in the order alleged in the CAC.

b) **State Consumer Protection Claims.** DENYING GM's motion to dismiss CAC Counts II (AL), III (FL), VI (IN), X (MD), XV (NJ), XVI (NJ), XXVI (TX), and XXVII (WV); and GRANTING GM's motion to dismiss CAC Counts VIII (KS), XII (MI), XXII (NC), XIX (NY), and XX (NY).

c) **Breach of Express Warranty.** GRANTING GM's motion to dismiss CAC Counts IV (FL), XIII (MI), XVIII (NJ), and XXIV (TX).

d) **Breach of Implied Warranty.** GRANTING GM's motion to dismiss CAC Counts V (FL), VII (IN), IX (KS), XI (MD), XIV (MI), XVII (NJ), XXI (NY), XXIII (NC), XXV (TX), and XXVIII (WV).

e) **MMWA.** GRANTING GM's motion to dismiss CAC Count I.

f) **Unjust Enrichment.** GRANTING GM's motion to dismiss CAC Count XXX on behalf of a putative nationwide class and with respect to Gruchacz and Tyson; and DENYING GM's motion to dismiss the balance of CAC Count XXX.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: July 19, 2021

Sherry R. Fallon
United States Magistrate Judge

50

# Appendix A

| Count | Claim | Plaintiff(s) | Putative Class(es) | Recommendation |
|-------|-------|--------------|--------------------|----------------|
| I | Breach of Warranty Under the Magnuson-Moss Warranty Act | All | Nationwide Class | GRANT |
| II | Violation of Alabama's Deceptive Trade Practices Act | Robinson & Schellhammer | Alabama Sub-Class | DENY |
| III | Violation of Florida Deceptive and Unfair Trade Practices Act | Savage, Palopoli, & Kladke | Florida Sub-Class | DENY |
| IV | Breach of Express Warranty (Florida) | | | GRANT |
| V | Breach of the Implied Warranty of Merchantability (Florida) | | | GRANT |
| VI | Violation of the Indiana Deceptive Consumer Sales Act | Bradley | Indiana Sub-Class | DENY |
| VII | Breach of the Implied Warranty of Merchantability (Indiana) | | | GRANT |
| VIII | Violations of the Kansas Consumer Protection Act | Toda | Kansas Sub-Class | GRANT |
| IX | Breach of Implied Warranty of Merchantability (Kansas) | | | GRANT |

| Count | Claim | Plaintiff(s) | Putative Class(es) | Recommendation |
|-------|-------|--------------|--------------------|----------------|
| X | Violation of Maryland Consumer Protection Act | Glenn | Maryland Sub-Class | DENY |
| XI | Breach of Implied Warranty of Merchantability (Maryland) | | | GRANT |
| XII | Violation of Michigan Consumer Protection Act | Tubbs & Blanchard | Michigan Sub-Class | GRANT |
| XIII | Breach of Express Warranty (Michigan) | | | GRANT |
| XIV | Breach of the Implied Warranty of Merchantability (Michigan) | | | GRANT |
| XV | Violations of New Jersey Consumer Fraud Act | Gruchacz & Tyson | New Jersey Sub-Class | DENY |
| XVI | Violation of New Jersey Truth-in-Consumer, Contract, Warranty and Notice Act | | | DENY |
| XVII | Breach of Implied Warranty (New Jersey) | | | GRANT |
| XVIII | Breach of Express Warranty (New Jersey) | | | GRANT |

| Count | Claim | Plaintiff(s) | Putative Class(es) | Recommendation |
|-------|-------|--------------|--------------------|----------------|
| XIX | Violations of New York General Business Law § 349 | Howard | New York Sub-Class | GRANT |
| XX | Violations of New York General Business Law § 350 | | | GRANT |
| XXI | Breach of Implied Warranty (New York) | | | GRANT |
| XXII | North Carolina Unfair and Deceptive Trade Practices Act | Macaisa & Cauthen | North Carolina Sub-Class | GRANT |
| XXIII | Breach of Implied Warranty of Merchantability (North Carolina) | | | GRANT |
| XXIV | Breach of Express Warranty (Texas) | Piazza & Cox | Texas Sub-Class | GRANT |
| XXV | Breach of the Implied Warranty of Merchantability (Texas) | | | GRANT |
| XXVI | Violation of Texas Deceptive Trade Practices Act | | | DENY |

4

| Count | Claim | Plaintiff(s) | Putative Class(es) | Recommendation |
|-------|-------|--------------|--------------------|----------------|
| XXVII | Violation of the West Virginia Consumer Credit and Protection Act | Conroe | West Virginia Sub-Class | DENY |
| XXVIII | Breach of the Implied Warranty of Merchantability (West Virginia) | | | GRANT |
| XXIX | Fraudulent Concealment | All | Each of the State Sub-Classes | GRANT-IN-PART & DENY-IN-PART |
| XXX | Unjust Enrichment | All | Nationwide Class or Alternatively, each of the State Sub-Classes | GRANT-IN-PART & DENY-IN-PART |